UNITED STATES, Appellee

v

BOBBY R. BALL, Private E–2, U. S. Army, Appellant

8 USCMA 25, 23 CMR 249

26

No. 9024

Decided May 24, 1957

*First Lieutenant William H. Carpenter* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig.*

*First Lieutenant James G. Duffy* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, First Lieutenant Robert L. Taylor,* and *First Lieutenant Russell L. Brenneman, Jr.*

### Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted by a general court-martial of the larceny of about one hundred items (Charge I) and of housebreaking (Charge II), in violation of Article 121 and Article 130, Uniform Code of Military Justice, 10 USC §§ 921, 930, respectively. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for five years. After modification

28

of the findings—the approved findings included only about thirty-four of the items originally alleged as stolen—the convening authority approved the findings and sentence. The board of review affirmed the findings and sentence as approved.

A hearing was granted by this Court limited to the following issues:

1. Whether the law officer erred in overruling the defense objection of unlawful search and seizure.

2. Whether the instruction that "possession of recently stolen property . . . raises a presumption that . . . [the accused] stole it, and, if it is shown that the property was stolen from a certain place at a certain time and under certain circumstances, that he stole it from such place at such time and under such circumstances" was correct.

Criminal Investigation Division agents of the Military Police, in the course of an investigation of a burglary of a post exchange, peered through a small opening of a public locker in a local train station. Inside the rented locker they spied a suitcase answering the description of one stolen in the burglary that they were investigating. In a separate bus station on the same post they found a second suitcase answering the description of another suitcase that had been stolen. Agents were posted at both public terminals with instructions to arrest any person or persons calling for or claiming the questioned suitcases. Two over-zealous agents were posted in the train terminal and they obtained without instructions entry to the locker in question, and made an inspection of the contents. This inspection included a search of the contents of the enclosed suitcase. They noted that items contained therein matched the description of items reported stolen in the burglary in question. They returned the bag to the locker and arrested the accused when he called for it. A search of the accused produced a claim check which when presented at the bus terminal proved to be a claim for the other bag being watched. There was some evidence at trial that this second bag had also been searched. At trial the accused objected to the introduction of the evidence seized on the grounds that the evidence was a product of an illegal search and seizure.

I

The Fourth Amendment to the United States Constitution forbids unreasonable searches and seizures and this provision is construed liberally to safeguard the right of the citizen to privacy. Byars v United States, 273 US 28, 47 S Ct 248, 71 L ed 520; United States v Lefkowitz, 285 US 452, 52 S Ct 420, 76 L ed 877; Safarik v United States, 62 F2d 892 (CA8th Cir) (1933). The Federal courts give meaning to this provision by excluding evidence that is the product of such a search. Weeks v United States, 232 US 383, 34 S Ct 341, 58 L ed 652. The courts also exclude evidence obtained through information supplied by an illegal search and seizure because it is the "fruit of the poison tree." Silverthorne Lumber Co. v United States, 251 US 385, 40 S Ct 182, 64 L ed 319. In military procedure, the Manual for Courts-Martial, United States, 1951, paragraph 152, provides that evidence is inadmissible if it is obtained as a result of an unlawful search and that evidence obtained through information supplied by such a search is likewise inadmissible. See United States v Doyle, 1 USCMA 545, 4 CMR 137.

The basic question in both civilian and military procedures is whether the search complained of is unreasonable. This depends on the circumstances of each case and must be determined in each case. Go-Bart Importing Co. v United States, 282 US 344, 357, 51 S Ct 153, 75 L ed 374. In the instant case we believe the Government is correct in its contention that the seizure of the property in question was not *the product* of the illegal search of the accused's luggage locker by the Criminal Investigation Agents. The search of the locker by the agents was carried out without warrant to search or arrest, without authority of the commanding

officer, and was not pursuant to a lawful arrest. This was an unlawful search of the property of the accused.

The Government, however, contends that the arrest that followed the search ▪ was not a result of search ▪ and that the articles seized ▪ when the apprehension was effected are admissible. It is clear that a search pursuant to a lawful arrest is not unreasonable though, of course, the arrest cannot be validated by the fruits of the search. Byars v United States, supra. It is also true that an illegal search and seizure does not render the subject matter forever immune from search and seizure. If the goods seized were not a product of the illegal search but were independently seizable then they are admissible. McGuire v United States, 273 US 95, 47 S Ct 259, 71 L ed 556; Parts Mfg. Corporation v Lynch, 129 F2d 841 (CA2d Cir) (1942); Safarik v United States, supra. The key question in the instant case thus resolves to this: Was the arrest that followed the initial search a lawful arrest? If the arrest was lawful then the seizure of the questioned goods is admissible under the doctrine of the Lynch and Safarik cases, supra.

Article 7(b), Uniform Code of Military Justice, 10 USC § 807, provides:

"Any person authorized under regulations governing the armed forces to apprehend persons subject to this chapter or to trial thereunder may do so upon reasonable belief that an offense has been committed and that the person apprehended committed it."

In this case there is no question but that the arresting officers were authorized under existing regula- ▪ lations to apprehend persons subject to the Code. The question is whether the officers here concerned were operating under circumstances which would raise a reasonable belief that an offense had been committed and the person they were apprehending committed it. That they had knowledge of a crime having been committed is unquestioned. Excluding the information obtained by their illegal search—the contents of the suitcase—had they sufficient information to raise a reasonable belief that the accused was the person who had committed the crime that they were investigating?

The agents knew that a suitcase answering the description of the one under surveillance had been stolen. Experience indicated that on an Army post a likely place to hide stolen articles was in a public locker—a soldier's general property being open to all because of the usual lack of privacy in military barracks. The small public locker system available had only one space rented and the contents—exclusive of the illegally obtained information—were one new suitcase of the variety stolen. This was not Grand Central Station and there was a limited selection of suspicious luggage. The head agent on the investigation ordered the apprehension of any person calling for the luggage—before the illegal search—based on the above information.

Under these circumstances we feel that the arrest of the accused was reasonable and hence the search and seizure accompanying the arrest was valid. The prior illegal search did not supply the information which led to the accused's apprehension. The law officer was therefore correct in his ruling that the questioned evidence was admissible.

II

"Presumption" is the slipperiest member of the family of legal terms. ▪ Insofar as the term "presumption" refers to justifiable inferences the members of the court-martial may draw from the facts, it is quite properly before the triers of fact. When the term is used to describe "presumptions of law" it is not properly before the members of the court-martial except in instructing the court that they are bound by the legal conclusion to be drawn from facts proved. Of course, this last-mentioned type is not a true "presumption" but is a rule of law grown out of an earlier presumption. Perhaps the better view is that presumptions have no efficacy except to avoid peremptory rulings and that when any evidence is

30

introduced on the particular point involved the presumption disappears. Judge Learned Hand stated in Alpine Forwarding Co. v Pennsylvania R. Co. 60, F2d 734, 736 (CA2d Cir) (1932) that: "If the trial is properly conducted, the presumption will not be mentioned at all." But see, Morgan, Instructing the Jury Upon Presumptions and Burden of Proof, 47 Harvard L Rev 59, 82 (1933).

Most jurisdictions however give instructions on relevant presumptions in a case and where the facts are in dispute this would seem to be the wise thing to do in guiding the jury to a proper conclusion. E.g., Decennial Digests, Trial, Key 205, 234 (7). But see Model Code of Evidence, Rule 704 (2); Wigmore, Evidence, 3d ed, § 2491 (2). We believe that the view adopted by the Manual for Courts-Martial, United States, 1951, is that those presumptions which are justifiable inferences are properly the subject of instructions to the court. The Manual for Courts-Martial, supra, at paragraph 138a, in discussing this problem states:

"With certain exceptions, the word 'presumption' as used in this manual means no more than 'justifiable inference' and the word 'presume' means no more than 'justifiably infer.' In this sense, a presumption is nothing more than a well recognized example of the use of circumstantial evidence (see 138b), and the weight or effect of such a presumption should be measured only in terms of its logical value. The weight to be given to a presumption of this kind will depend upon all the circumstances attending the proved facts which give rise to the inference to be drawn from such facts. *The fact that evidence is introduced to show the nonexistence of a fact which might be inferred from proof of other facts, or to show the nonexistence of such other facts, does not, if the evidence can reasonably be disbelieved, necessarily destroy the logical value of the inference, but such evidence must be weighed against the inference.* In making and weighing presumptions, and in considering evidence intro-

duced in rebuttal thereof, members of courts must apply their common sense and their general knowledge of human nature and the ordinary affairs of life." [Emphasis supplied.]

With regard to the particular error alleged now before this Court, the defense counsel objected "to any use of the word 'presumption'." The law officer noted the objection but overruled it and in giving instructions said:

"With respect to the element of the accused's intent, the court is advised that intent ordinarily cannot be proved by direct evidence unless, for example, the accused has been overheard to make a statement of his intent. You are advised, however, that intent may be proved by circumstantial evidence, that is, by facts and circumstances from which, alone or in connection with other facts, you may, according to the common experience of mankind, reasonably infer the existence of an intent. Thus, the law presumes, and you would be justified in inferring that a person must have intended the natural and probable consequences of an act purposely done by him. The weight, if any, to be given an inference of the accused's intent must of course depend upon the circumstances attending the proved facts which give rise to the inference, as well as all the other evidence in the case.

. . . . .

"Proof that a person was in possession of recently stolen property or part of it raises a presumption that he stole it, and, if it is shown that the property was stolen from a certain place at a certain time and under certain circumstances, that he stole it from such place at such time and under such circumstances.

"Now, an explanation of the term 'presumption,' as used in that statement of the law:

"The court is advised that the word 'presumption' means no more than 'justifiable inference' and the word 'presume' means no more than 'justifiably infer.' In this sense, a pre-

**31**

sumption is nothing more than a well recognized example of the use of circumstantial evidence, and the weight or effect of such a presumption should be measured only in terms of its logical value. The weight to be given to a presumption of this kind will depend upon all the circumstances attending the proved facts which give rise to the inference to be drawn from such facts. The fact that evidence is introduced to show the nonexistence of a fact which might be inferred from proof of other facts, or to show the nonexistence of such other facts, does not, if the evidence can reasonably be disbelieved, necessarily destroy the logical value of the inference, but such evidence must be weighed against the inference. In making and weighing presumptions, and in considering evidence introduced in rebuttal thereof, members of courts must apply their common sense and their general knowledge of human nature and the ordinary affairs of life."

The instructions given were comprehensive and we think when viewed as a whole they state the law ▮▮ correctly and are not confusing. The word "presumption" by itself is not enough to render an instruction erroneous. As long as the court-martial is given adequate tools to apply the instructions on presumptions correctly, there is no error. In this case the detailed explanation of the meaning of the word as used in the instructions certainly rendered impossible any harmful conclusion that could be drawn from use of the word "presumption" alone. The Manual might do better to state right out that certain usages are "justifiable inferences" but here the law officer defined the meaning of the term "presumption" correctly and adequately. In the future, law officers would be well advised to utilize the correct usage—justifiable inferences—rather than the ambiguous usage—presumptions—which, as in this case, required a detailed definition to save error. The use of the phrase "the law presumes" is, of course, especially bad in this connection and is incorrect.

The use implies a "presumption of law" which is not the type of presumption involved in this case. The clear exposition of the correct use of the term by the law officer we feel overcame any prejudicial effect that this particular erroneous phrase had on the court-martial.

In addition to the general question discussed above, of the use of the term "presumption" and to the effect to be given such justifiable inferences as fall in that class, there is a special problem that must be considered in connection with the particular inference involved in this case. As we have stated before, the general rule is that ▮▮ exclusive and unexplained possession of recently stolen property will justify an inference that the possessor is the thief. United States v Johnson, 3 USCMA 447, 453, 13 CMR 3. See generally Wigmore, Evidence, 3d ed, §§ 152, 2513.

When the evidence shows, or the accused asserts, that his possession was not exclusive, he is entitled ▮▮ to an instruction to the effect that if the court finds that the possession alleged was not exclusive it may not infer that the accused had stolen the goods in his "possession." People v Ascey, 304 Ill 404, 136 NE 766; State v Zoff, 196 Minn 382, 265 NW 34; People v Kubulis, 298 Ill 523, 131 NE 595; Sorenson v United States, 168 Fed 785 (CA8th Cir) (1909).

However, when—as in the instant case—the accused merely offers an explanation or the evidence tends to explain the possession, which had been shown to be exclusive, *it is for the court-martial to believe or disbelieve that explanation when considering all the evidence.* Wilson v United States, 162 US 613, 16 S Ct 895, 40 L ed 1090; Wilkerson v United States, 41 F2d 654, 657 (CA7th Cir) (1930); Loftus v United States, 46 F2d 841, 846 (CA 7th Cir) (1931); Drew v United States, 27 F2d 715, 716–717 (CA2d Cir) (1928); Tractenberg v United States, 293 Fed 476, 478–479 (CA DC Cir) (1923). In the instant case there was evidence that the accused explained his

32

possession to the investigators by stating that he was acting as a messenger for a named person. The accused testified that he had obtained the key to the locker by putting a dime in the key box. There was no question as to the exclusiveness of possession and consequently not instructing on this limitation of the inference was not prejudicial. The court-martial was adequately instructed on what effect the justifiable inference was to have and his explanation of his possession was one of the facts to be considered by the court-martial. It was not error not to instruct on particular parts of the evidence if the instructions as a whole were adequate. United States v Schick, 7 USCMA 419, 22 CMR 209. The recentness of the theft of the property is a question generally going to the probative value of the possession and is, of course, a question for the court-martial.

When taken as a whole the instructions are not prejudicial to the rights of the accused. The unfortunate early search and seizure and attempted concealment of it by the police officers is certainly to be condemned and we wholeheartedly agree with the reviewing staff judge advocate that basic rights of accused must not be violated and that investigators, however zealous, should adhere to the Uniform Code of Military Justice and the Manual for Courts-Martial, supra.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge LATIMER concurs in the result.