UNITED STATES, Appellee

v

WILLIAM R. CROWELL, First Lieutenant, U. S. Army, Appellant

9 USCMA 43, 25 CMR 305

No. 10,064

Decided March 21, 1958

*First Lieutenant Judson A. Parsons, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel James M. Scott* and *Major Frank C. Stetson.*

*First Lieutenant Richard W. Young* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *Lieutenant Colonel John G. Lee.*

## Opinion of the Court

HOMER FERGUSON, Judge:

First Lieutenant William R. Crowell was found guilty by general court-martial, convened at Frankfort-am-Main, Germany, of five offenses of larceny, in violation of Article 121 of the Uniform Code of Military Justice, 10 USC § 921. The findings of guilt of two of the offenses were set aside by the board of review, while the findings on the remaining offenses were affirmed. We granted the accused's petition for review, limiting briefs and arguments to the following issues:

1. Whether the instructions by the law officer on the legal presumption of guilt, the burden of going forward with proof by the accused, and the balancing of the explanation by the accused against the presumption of guilt was prejudicial.

2. Whether the advice by the law officer that a failure to produce "constitutes a stealing" was correct.

As a proper background for the consideration of these issues, a brief statement of the facts is necessary. In July

44

1955 the accused became custodian of the Wertheim Branch of American Youth Activities, a nonappropriated fund activity established for the purpose of bringing various social, recreational, and athletic benefits to dependent children in the European command. As custodian, the accused was responsible for the disbursement of its funds. The regulations governing procedures for the administration of such activities required that checks drawn be supported by receipts, vouchers and second party certificates. The accused failed to follow these procedures in accounting for money in his charge. In January 1956, he was ordered to a new station and responsibility for the fund was transferred to a new custodian. A subsequent audit of the fund revealed that a shortage existed in the amount of $1,127.01. The accused's inability to account for this shortage resulted in his court-martial. There was no direct evidence adduced at trial to show that the accused had converted the money to his own use, or that there had been any unusual personal expenditures or receipts by him. The theory of prosecution was based on the inference of larceny that may be drawn from a failure to account by one who has assumed the custody of another's property. This theory was previewed at an early stage of the proceedings before any witnesses had been called when trial counsel read to the court-martial the following passage from paragraph 138a, Manual for Courts-Martial, United States, 1951:

"It may be presumed that one who has assumed the custody of the property of another has stolen such property if he does not or cannot account for or deliver it at the time an accounting or delivery is required."

In closing argument, after all the evidence had been presented, trial counsel again referred to the theory upon which the accused's prosecution had been based.

In order to acquaint the court-martial with the legal principles involved, the law officer in his charge made the following prefatory comments:

"We are here interested in the wrongful withholding aspect of larceny. *There is a well-established legal presumption that one who has assumed the stewardship of another's property has embezzled such property if he does not or cannot account for or deliver it at the time an accounting or delivery is required of him. The burden of going forward with the proof of exculpatory circumstances then falls upon the steward, and his explanatory evidence, when balanced against the presumption of guilt arising from his failure or refusal to render a proper accounting of or to deliver the property entrusted to him, creates a controverted issue of fact which is to be determined by you members of the court.* I might add that in military law embezzlement and larceny are one and the same offense." [Emphasis supplied.]

He then instructed the court—"with these legal principles in mind"—concerning the essential elements necessary to constitute the offense of larceny. With respect to the question of intent, the law officer instructed on the use of circumstantial evidence. Defense counsel's requested instructions on the effect of character evidence and the definition of "reasonable doubt" were next given, followed by the mandatory instructions required by Article 51(c) of the Code, supra, 10 USC § 851. At the completion of the charge, the president requested further instructions concerning the definition of the word "steal" and in particular whether the court was to consider the word "steal" as being "synonymous with misappropriation or failure to produce, embezzlement, larceny, and so forth, or is there a further connotation?" The following colloquy then ensued:

"LAW OFFICER: . . . To embezzle or steal is all the same now. It constitutes larceny. There is only one offense of larceny. It embraces the usual type of taking that we know or the type where a person has custody of property and then he converts it to his own use, which we used to call embezzlement under former codes that the Department of the Army followed, but under the present code, embezzlement and, as I say, the or-

**45**

dinary type of larceny that we know are one and the same.

"PRESIDENT: *And the failure to produce?*

"LAW OFFICER: *Constitutes a stealing.*

"PRESIDENT: *Constitutes a stealing?*

"LAW OFFICER: *That is correct.*

"PRESIDENT: Now would you please reiterate for the court that part of your instructions dealing with the responsibilities of persons who have custodianship of funds of others in the first part of your instructions?

"LAW OFFICER: Yes, sir, I think I stated this: There is a well-established legal presumption that one who has assumed the stewardship of another's property has embezzled such property if he does not or cannot account for or deliver it at the time an accounting or delivery is required of him.

"PRESIDENT: That is sufficient." [Emphasis supplied.]

The court subsequently closed to deliberate on findings and, upon reopening, announced that it had found the accused guilty of five specifications of larceny.

I

The question of presumptions is not one of first impression with this Court. In the past we have had occasion to consider the correctness of instructions encompassing this term, which we referred to in United States v Ball, 8 USCMA 25, 23 CMR 249, as "the slipperiest member of the family of legal terms." In the *Ball* case, supra, we took pains to emphasize that the term "presumption" refers only to justifiable inferences which the members of a court-martial may draw from the facts and accept or reject according to their experience. Although the law officer in the *Ball* case, supra, utilized the term presumption rather than justifiable inference, his instructions when considered as a whole adequately stated the law in that area. We concluded our opinion in that case with the caveat that in the future law officers "would be well advised to utilize

the correct usage—justifiable inferences —rather than the ambiguous usage— presumptions—which, as in this case, required a detailed definition to save error." In the case at bar, however, the law officer's instruction was so glaringly defective as to preclude any question of saving error. Here, the law officer advised that there existed "*a well-established legal presumption* that one who has assumed the stewardship of another's property has embezzled such property if he does not or cannot account for or deliver it at the time an accounting or delivery is required of him." Nowhere in the entire instructions was there an attempt to define the term or qualify it in any manner. Furthermore, the law officer's characterization of the presumption as being well-established in law could have had no other effect than to clothe it with an aura of unquestioned legal sanctity which is neither deserving nor correct. We have little hesitancy therefore in concluding that the instruction conveyed to the members of the court an erroneous impression respecting the effect to be accorded this so-called "well-established legal presumption" in their deliberations on the findings. Cf. United States v Miller, 8 USCMA 33, 23 CMR 257.

There are yet additional defects in the instructions which deserve discussion.

In the next portion of his charge, the law officer advised that the accused's explanatory evidence "when balanced against the *pre-* *sumption of guilt* arising from his failure or refusal to render a proper accounting of or to deliver the property entrusted to him, creates a controverted issue of fact which is to be determined by you members of the court." (Emphasis supplied.) It is argued that this clause renders harmless the error appearing in the first part of the sentence relating to the burden of proof and that when considered as a whole it implies that the accused can rebut the presumption thereby leaving a question of fact to be determined by the court. We are unimpressed with this argument. Moreover, we believe that when the

46

instruction is read as a whole it still leaves with the accused the burden of producing evidence. Additionally, there is present the clear implication that the evidence adduced on behalf of the accused must "balance" the presumption and that in order to do so such evidence must be of a nature greater than that needed to raise a reasonable doubt. Furthermore, the use of the phrase "presumption of guilt" cannot be sanctioned under any circumstances. It has no basis in our system of jurisprudence and runs counter to the well-known presumption of innocence which every accused enjoys until "his guilt is established by legal and competent evidence beyond reasonable doubt." Article 51 (c) (1) of the Code, supra. With commendable frankness, the Government, in its brief, concedes that the use of the term "presumption of guilt" creates "a fair risk" that a harmful conclusion could be drawn from such terminology.

## II

We next turn our attention to the second granted issue. At the completion of formal instructions, the law officer, in response to a question posed by the president, remarked that a failure to produce constitutes a stealing. This advice had the effect of compounding the errors previously referred to on the question of presumptions. It was tantamount to advising the court that a failure to produce or deliver entrusted funds is equivalent to a larceny of the funds. Under this theory once the Government has shown a failure to deliver or account, it has also proven a larceny for the two are indistinguishable. Such is not the law. The mere failure on the part of a custodian to account for entrusted funds does not in and of itself constitute a larceny. However, a refusal to account when demand is made or when an accounting is due will permit an inference that the custodian has wrongfully converted the property to his own use. United States v Valencia,

1 USCMA 415, 4 CMR 7. Generally, in cases of embezzlement, evidence as to the embezzlement act and the intent is inferential. Wharton, Criminal Law, 12th ed, § 1313. The intent may be manifested by various acts such as "making false entries, denial of receipts of money, not accounting when it should be done, rendering false accounts, or practicing any form of deceit, or running away with the money, or actually expending the money for defendant's own uses contrary to his [owner] directions, or otherwise diverting the course of the money to make it his own." Territory v Hale, 13 N Mex 181, 81 Pac 583, 585. See also People v Dettmering, 278 Ill 580, 116 NE 205.

The inference which may be drawn from a custodian's failure to account for or deliver entrusted property at the time an accounting or delivery is required must be considered by the court, together with all the other facts and circumstances of the case, in determining the issue of an accused's guilt or innocence. The court must adequately be informed, however, that such an inference is not mandatory and that it can be rejected or accepted as the court deems fit. This was not done in the case at bar and a failure to do so prejudiced the accused.

The decision of the board of review is reversed. The findings and sentence are set aside and a rehearing may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

The Government concedes that the instruction on presumptions was erroneous and prejudicial and that a rehearing is proper. In concurring in the result, I go no further than to accept the concession which I believe to be well founded.