UNITED STATES, Appellee

v

ANDREW W. OAKLEY, Chief Warrant Officer (W–2),
U. S. Army, Appellant

11 USCMA 187, 29 CMR 3

No. 13,211

Decided January 29, 1960

*First Lieutenant Robert B. Gillan* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel W. H. Blackmarr, Captain Arnold I. Melnick,* and *First Lieutenant Robert D. Stiles.*

*First Lieutenant George J. Miller* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused stands before this Court convicted of stealing $688 which is the difference between the money given him by a finance office to pay members of a unit, and the sum of the amount he disbursed and that which he returned to finance after making the pay. Instead of returning the overage to the responsible officer, accused appropriated the money to his own use. On his first trial he was convicted and sentenced to dishonorable discharge, total forfeitures, and confinement for six months. The convening authority approved the sentence but suspended the execution of the punitive discharge until accused's release from confinement or completion of appellate review, whichever was later. A board of review set aside the findings and sentence and ordered a rehearing. The accused was convicted and sentenced a second time but subsequently a board of review set aside those findings and the sentence. At his third trial, the accused was again found guilty, but this time the sentence did not include confinement, for it was limited to a dishonorable discharge and total forfeitures. The convening authority approved the findings and sentence but suspended the execution of the punitive discharge pending completion of appellate review, and deferred application of the forfeitures until the sentence is ordered into execution. A board of review affirmed, and thereafter we granted accused's petition for review to consider an instruction on insanity and to determine whether he was

**187**

entitled to a suspension of the punitive discharge.

Because of developments subsequent to our order granting review, the last mentioned issue is moot. It is not disputed by the parties that on September 16, 1959, General Court-Martial Order Number 160 was issued by Headquarters, First United States Army, which vacated the action suspending the dishonorable discharge. This order shows that the vacation was pursuant to Article 72 of the Uniform Code of Military Justice, 10 USC § 872. Therefore, it appears the Army considered the accused to be a true probationer, afforded him a chance for rehabilitation, which apparently he bungled, and held a hearing before revoking the suspension. Such being the case, we need not consider the legal effect of any convening authority's action suspending execution of the discharge.

The other issue requires us to consider the instructions on insanity. The facts giving rise to this question are these. An expert in the field of psychiatry testified that accused was not mentally responsible for the larceny because, even though he could distinguish right from wrong, he could not adhere to the right. This witness used the irresistible impulse test and concluded that, because of his mental condition, the accused could not resist the temptation to steal. The Government produced evidence to the contrary, including accused's previous military and civilian records which indicated he was perfectly sane. After fully instructing the court-martial on the formulae to support a finding of mental responsibility, the law officer completed his charge by stating:

"The accused is presumed to be sane at the time of the alleged offense. This presumption remains in effect until, from the evidence, a reasonable doubt of his sanity at the time in question appears. When, however, as in this case, substantial evidence tending to prove that the accused was insane at the time of the alleged offense is introduced, the sanity of the accused is an essential issue of fact.

"In determining the question of the sanity of the accused, you are entitled to consider his sanity in the light of your common sense and your general knowledge of human nature and the ordinary affairs of life. Thus you may consider that the general experience of mankind is that most people are sane. This general experience may be taken into account in weighing the evidence pertaining to the issue of the accused's sanity. The burden of proving the sanity of the accused beyond a reasonable doubt, like every other fact necessary to establish the offense alleged, is upon the prosecution.

"If, in the light of all the evidence and taking into consideration your general knowledge of human nature and the ordinary affairs of life, you have a reasonable doubt as to the mental responsibility of the accused at the time of the alleged offense, you must find the accused Not Guilty of that offense."

It is accused's contention that that portion of the law officer's instruction which refers to the presumption of sanity incorrectly stated the law and prejudicially affected the substantial rights of the accused. We conclude to the contrary and, in so doing, need not pause to consider whether the first part of the advice is legally correct, for when all of the instructions on the subject are considered collectively, we find no prejudice. Viewed as a whole, the charge is so worded that whether sanity is a true presumption as asserted by the Government or a mere administrative device affecting the duty of producing evidence of the presumed fact, as contended for by the accused, is immaterial because the law officer did not permit the court-martial to give weight to the presumption of sanity when deliberating on the findings. True it is that in the first two sentences of the quoted instruction he mentioned the presumption, but he immediately eliminated it from consideration by informing the court there was substantial evidence tending to prove the accused was insane and that, under those circumstances, sanity was a disputed question of fact which had to be

determined from the evidence. He then informed the court members about some matters they might consider in connection with their findings on that issue and concluded his instructions on this aspect of the case by stating the burden of proving the sanity of the accused beyond a reasonable doubt was upon the prosecution and if the court members had a reasonable doubt as to the sanity of the accused at the time of the alleged offense, they must necessarily find him not guilty.

Stated somewhat differently, the first portion of the advice on sanity may have been unnecessary, but that is not to say it announces an incorrect rule of law, for there is respectable authority to support the principle that sanity may be presumed. See United States v Biesak, 3 USCMA 714, 14 CMR 132, and Judge Ferguson's concurring opinion in the case at bar. But there is little use in involving a court-martial with that doctrine when it is instructed to base its findings on the facts. Assuming, without deciding, that in this particular instance the court-martial members chose not to believe the expert who asserted the accused could not resist the temptation to steal, they were not faced with relying on the presumption of sanity, for there was testimony that accused was sane. In this connection, it is worth noting that the instruction did not inform the court the presumption could be regarded as evidence. Cf. Biesak, supra. In effect, this court was told the presumption had vanished because there was evidence of insanity and that facts were the touchstone to guide them in their deliberations. Accordingly, if the instructions were not correct, they were favorable to the accused, and he is in no position to complain.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring):

I concur.

The accused was initially found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for six months. The convening authority approved the sentence but suspended the execution of accused's discharge until his release from confinement or completion of appellate review, whichever was the later date. An Army board of review set aside the findings and sentence and ordered a rehearing. At this trial, accused was again convicted and sentenced, but a board of review once more set aside the findings and sentence and ordered a second rehearing. Tried for the third time, the accused was again found guilty. However, his sentence was on this occasion limited to dishonorable discharge and total forfeitures. The convening authority approved the findings and sentence, with a technical suspension of the dishonorable discharge pending completion of appellate review. The board of review affirmed, and we granted review on the issue of the law officer's instructions on insanity and to determine whether accused was entitled to a probationary suspension of his discharge.

I join with Judge Latimer in his conclusion that the vacation of the suspension of accused's discharge, pursuant to Code, supra, Article 72, 10 USC § 872, renders moot the question of whether he was entitled to a probationary suspension of the punitive separation adjudged. Thus, we need not consider this issue further, and I pass to the law officer's instructions on the question of mental responsibility, concerning which I desire to set forth my views more fully than Judge Latimer has chosen to do.

The facts of this unfortunate case need not be related in detail. Suffice it to say the accused was appointed by the Finance Officer to pay certain officers on April 1, 1957. Upon turning in excess funds and copies of required payroll documents, he failed to account for the sum of $688.00. He subsequently confessed to the theft of this sum.

Two psychiatrists testified at the trial. Dr. Hill, appearing for the defense, related his belief that, at the time of the offense, accused was unable to adhere to the right. Dr. Haeussler, ap-

pearing for the Government, opined that the accused, at the time of the theft, was able to distinguish right from wrong and to adhere to the right. Thus, the question of accused's mental responsibility was placed in issue before the court-martial.

At the conclusion of the trial, the law officer instructed the members of the court with respect to this issue:

*"The accused is presumed to be sane at the time of the alleged offense. This presumption remains in effect until, from the evidence, a reasonable doubt of his sanity at the time in question appears. When, however, as in this case, substantial evidence tending to prove that the accused was insane at the time of the alleged offenses is introduced, the sanity of the accused is an essential issue of fact.*

"In determining the question of the sanity of the accused, you are entitled to consider his sanity in the light of your common sense and your general knowledge of human nature and the ordinary affairs of life. Thus you may consider that the general experience of mankind is that most people are sane. This general experience may be taken into account in weighing the evidence pertaining to the issue of the accused's sanity. The burden of proving the sanity of the accused beyond a reasonable doubt, like every other fact necessary to establish the offense alleged, is upon the prosecution.

"If, in the light of all the evidence and taking into consideration your general knowledge of human nature and the ordinary affairs of life, you have a reasonable doubt as to the mental responsibility of the accused at the time of the alleged offense, you must find the accused Not Guilty of that offense." [Emphasis supplied.]

This instruction appears in Appendix IX, Department of the Army Pamphlet 27–9, The Law Officer, April 1958, and is apparently based upon United States v Biesak, 3 USCMA 714, 14 CMR 132, a decision which is as variously interpreted as its readers are numerous. There, the Court was faced with an instruction by a law officer on the presumption of sanity and its use as evidence in a case wherein an issue was raised concerning the mental responsibility of the accused. Judge Brosman, writing for a unanimous Court, held that reference to the presumption of sanity in advice to the court members concerning mental responsibility was inartful, particularly when the law officer adverted to the "evidence" supplied by the presumption. However, in the absence of a request for clarification by defense counsel, the instruction was held not to be prejudicial. Since that time, other decisions have been reached by this Court which affect the validity of some of the matters discussed in *Biesak*, supra. Thus, in United States v Ball, 8 USCMA 25, 23 CMR 249, we pointed out that law officers would be well advised to omit the ambiguous term "presumption" from their instructions to the court members. We reiterated this injunction in United States v Miller, 8 USCMA 33, 23 CMR 257, and United States v Crowell, 9 USCMA 43, 25 CMR 305. The rationale of those cases is equally applicable to instructions on sanity, and I am of the opinion that, evidence of lack of mental responsibility or capacity having been introduced, the law officer should not advise the court concerning the "presumption" of sanity.

I do not find anything in United States v Biesak, supra, which is inconsistent with my position here. There, for differing but equally sound reasons, Judge Brosman pointed out, at page 720, the same principle:

". . . Under this view, in a criminal case the presumption of sanity would vanish once evidence was introduced *which could operate to produce* a reasonable doubt concerning the sanity of the accused. For most purposes, if not for all, any evidence, whether from prosecution or defense witnesses, which sufficed to raise the issue of sanity would cause the presumption of sanity to disappear——and thereby the jury or court-martial would be rid of its prior duty to assume that the accused was sane. *The same evidence which*

sufficed to raise the issue of sanity, and thereby to necessitate the giving of instructions on sanity, would itself banish the presumption from the case—with the result that in the usual case no instruction could thereafter properly be given as to this presumption." [Emphasis supplied.]

The elimination from consideration by the court-martial of the "presumption of sanity" does not mean, however, that the court members are not permitted to draw the inference that the accused is in fact responsible from the rational probability upon which the presumption was originally based. In short, the fact that a great majority of men are sane and the members' observation of the accused, as well as their study of the circumstances surrounding the offense, may cause them to reject the evidence of irresponsibility and to conclude that he met the proper mental standards. Davis v United States, 160 US 469, 16 S Ct 353, 40 L ed 499 (1895), thus, speaks of the "evidence" supplied by the presumption; and, as noted by Judge Brosman, in United States v Biesak, supra, a Massachusetts court has referred to it as "the rational probability on which the presumption rests." Commonwealth v Clark, 292 Mass 409, 198 NE 641, at page 645. This Court has made practical application of the principle, for, in United States v Burns, 2 USCMA 400, 9 CMR 30, it ordered a rehearing on the basis of instructional error concerning the accused's mental responsibility wherein the only evidence concerning his mental state was adverse to the Government. Had we not impliedly recognized the right of the court members in that case to reject the testimony of accused's witnesses and rely upon the common experience of mankind, we would have been required to dismiss the charge for insufficiency of evidence. Code, supra, Article 67(e), 10 USC § 867 (e). On the other hand this does not mean that the judicially recognized fact that most people are sane will be sufficient to establish sanity in all cases and without regard to the *quantum* of proof of insanity. It may be the latter is so strong that "a reasonable mind must necessarily have had a reasonable doubt." Cooper

v United States, 218 F 2d 39, 41 (CA DC Cir) (1954); Hopkins v United States, — F 2d — (CA DC Cir), decided December 11, 1959.

In sum, then, I believe it improper to advise the members of a court-martial that the accused is presumed to be sane when sufficient evidence has been introduced to raise an issue concerning his mental responsibility. United States v Biesak, supra; United States v Ball, supra. It should be equally apparent that, should no such issue be raised, instructions on sanity are normally not required, for there is little reason to present legal principles to a jury *in vacuo*. However, the fact that the presumption is eliminated does not mean that the fact finders may not consider its predicate and conclude therefrom that evidence of irresponsibility should be rejected. In weighing evidence, a member is expected to utilize his common sense and his knowledge of human nature and of the ways of the world. Manual for Courts-Martial, United States, 1951, paragraph 74a (2). It may, therefore, be proper to call fairly to the attention of the court-martial that they may take into account the common experience of mankind in weighing the question before them. Davis v United States, supra; Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 168.

Applying the foregoing principles to the law officer's instructions in this case, I have little difficulty in concluding the accused was not prejudiced by the mention therein of the presumption of sanity. Immediately following the statement that the accused "is presumed to be sane," the law officer advised the members that substantial evidence tending to prove that accused was insane had been introduced and that accused's responsibility was an essential issue of fact. He subsequently informed them that the burden of proof was upon the prosecution to establish sanity beyond a reasonable doubt and that, unless they were so convinced, it was their duty to acquit. When the instructions are construed as a whole, there is no danger the members gave an unwarranted effect to the term "pre-

"sumption" or that they considered it as evidence in the case. United States v Ball, supra; United States v Biesak, supra. Nor was it improper to refer to the right of the members to consider the general experience of mankind that most people are sane. That rational basis for the presumption of sanity is a matter from which the members may correctly infer responsibility. Davis v United States, supra; Commonwealth v Clark, supra.

It is clear, therefore, that the instructions could not have led the court-martial astray in their deliberations. Accordingly, I join with Judge Latimer in affirming the decision of the board of review.