UNITED STATES

v.

Anthony D. GARCIA, 549 04 4244, Private
(E-1), U. S. Marine Corps.

NCM 77 0757.

U. S. Navy Court of Military Review.

Sentence Adjudged 7 Dec. 1976.

Decided 31 Aug. 1977.

LT Michael E. Blount, JAGC, USNR, Appellate Defense Counsel.

LT Michael C. Farrow, JAGC, USNR, Appellate Government Counsel.

Before DUNBAR, BAUM and GREGORY, JJ.

GREGORY, Judge:

Appellant was convicted, *inter alia,* of wrongful possession of 153 grams of marijuana, in violation of U.S. Navy Regulations and Article 92, 10 U.S.C. § 892, Uniform Code of Military Justice. The record of trial indicates that appellant had been a passenger in a vehicle which stopped at the main gate to Camp Pendleton, California. The sentry on duty at the gate apparently detected an odor of alcohol on the driver's breath when he asked for a visitor's pass and administered a "field sobriety test" which the driver passed. The sentry then requested consent from the driver to search the interior of the vehicle for "open containers", and permission was granted. In the course of this search, the sentry came across a laundry bag with appellant's initials on it on the floor in front of the rear seat. He observed a plastic bag protruding from a towel inside the laundry bag, which happened to be of net construction. The sentry could see a substance inside the plastic bag which he suspected to be marijuana. The sentry checked further and seized this plastic bag and several additional bags, which all proved to contain marijuana. After the marijuana was discovered, the sentry asked appellant if the laundry bag was his, without warning him pursuant to Article 31 of the Code, to which appellant replied affirmatively.

On appeal, appellant contends that the consent to search given by the driver would not extend to his laundry bag and

that the search of this laundry bag was illegal. Generally, a guest or passenger in a vehicle has no ground for objection to its search, and consequently the lawful owner or user of a vehicle may validly consent to a search of the vehicle despite the fact that the vehicle contains property belonging to a guest or passenger. There is some support, however, for the proposition that such consent would not extend to articles clearly not the property of the owner or user.[1] As noted previously, the laundry bag in this case had appellant's initials on it. It is not necessary that we resolve this particular issue in this instance, however, since we are convinced the marijuana discovered was within "plain view" of the sentry. There is no dispute as to the driver of the vehicle having given consent to search the interior of the vehicle. The sentry was therefore rightfully inside the vehicle when he observed the suspected marijuana inside the net laundry bag. Although the consent granted him was directed toward "open containers", the sentry was not required to close his eyes to contraband directly in front of him. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Burnside,* 15 U.S.C. M.A. 326, 35 C.M.R. 298 (1965); *United States v. Kazmierczak,* 16 U.S.C.M.A. 594, 37 C.M.R. 214 (1967).

Appellant has also alleged that the marijuana discovered in the course of the search of his laundry bag was the result of an unlawful interrogation. As we indicated earlier, the sentry secured an acknowledgement as to the ownership of the laundry bag without providing appellant any warning as to possible self-incrimination. The military judge correctly noted that he would not give any consideration to this question and answer; however, he refused to suppress the evidence concerning the actual discovery of the contraband. Appellant argues that the unwarned statement also infected the results of the search, relying on *United States v. Peake,* 45 C.M.R.

786 (N.C.M.R.1971). As noted by appellant Government counsel, *Peake* concerned a situation where the interrogation preceded the seizure of suspected contraband and is clearly distinguishable from the case of our appellant where the interrogation followed.

In summary, we believe the search and seizure in this case to have been completely proper. We have considered the well-reasoned views of Senior Judge Dunbar in his dissenting opinion. We are unable, however, to concur in his opinion that the test of reasonableness must be applied to a consent-type search. The Constitutional right to be secure against unreasonable searches may be waived. For this reason, a search which is conducted with the freely given consent of a person entitled to waive the immunity against unreasonable searches meets Fourth Amendment requirements. *Zap v. United States,* 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Paragraph 152, MCM, 1969 (Rev.), 4 *Wharton's Criminal Law and Procedure,* § 1578. This is why the requirement is so stringent that it be conclusively established that such consent was freely and voluntarily given.

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

Judge BAUM concurs.

DUNBAR, Senior Judge (dissenting):

In my opinion, this case presents an unusual and important Constitutional issue. This dissent is limited exclusively to that issue.

The Government's sole witness at trial was Lance Corporal Syring, the gate guard who conducted the search presently challenged by appellant. At the outset, it is noted that his testimony appears honest, forthright and indicates he was performing his duties in what he considered to be an efficient manner.

1. *See People v. Stage,* 7 Cal.App.3d 681, 86 Cal.Rptr. 701 (1972), where it was held that an automobile owner's consent to the search of his car did not entitle officers to search a passenger's jacket lying on the rear seat of the car, where the officers knew the jacket belonged to the passenger.

Lance Corporal Syring testified that on 30 August 1976, he was on duty at the main gate, Camp Pendleton, as an assistant to the sentry. The car, in which appellant was one of several military occupants, approached the gate and requested a visitor's pass. The witness noticed the smell of alcohol on the driver's breath. After administering a negative "field sobriety test," the witness sought and received permission from the driver to search the interior of the automobile for "open containers."

While searching the rear floorboard, the witness noticed a laundry bag with the appellant's initials in clear view on the bag. The bag was of net construction. Visible through the net was a towel and protruding from one end of the towel was a transparent plastic bag. Lance Corporal Syring could see a substance which he suspected to be marijuana in the plastic bag. After opening the net bag and then opening the towel, additional plastic bags were discovered. The substance in the bags was ultimately confirmed to be marijuana.

Testimony revealed the laundry bag in question was lying on its side, one end secured with a drawstring. However, because the bag was of net construction, the guard could view its contents as he lifted it to look for containers. At this time, the bag was located on the floor-board between appellant and another passenger.

No testimony appears in the record, despite extensive direct, cross and redirect examination, that the guard was attempting to search or pry into the contents of the bag.

The following dialogue occurred on cross-examination:

Q: Could you tell, without opening up the towel, that there was what you thought to be marijuana in that one bag?

A: Yes, sir. [R. 21].

Apparently, considerable misunderstanding and confusion occurred at the trial because the military judge as well as trial and defense counsel were unaware that in his testimony the guard was referring to a see-through net laundry bag. It was only later when the guard was testifying during the case-in-chief that this fact developed as follows:

Q: In other words, could one look into the bag, in the condition it was it [sic], when you got in the car, without opening the strings?

A: Yes, sir. It was a net bag.

Q: Oh, it was a net bag?

A: Yes, sir. [R. 33].

In view of the foregoing, it may be reasonably concluded, at least from the record of trial, that the guard came across the marijuana, by accident, as the result of a freely given consent search to look for "open containers."

In this case, however, appellant does not contest the Government's authority to search the interior of the car pursuant to the consent given by the automobile's driver. Rather, appellant asserts that the consent given could not and did not extend to his laundry bag, as the driver of the car was legally incompetent to give consent to the search of an object over which he exercised no proprietary control. Appellant claims it would have been necessary, therefore, to secure his personal consent to search the property (the laundry bag) before that property could have been violated.

However, in my opinion the sole and vital issue presented in this special court-martial case is the legality of the overall search of the vehicle in which the contraband was discovered, i. e., its reasonableness. Or, stated in another manner, the question concerns the right of the gate guard to pursue a consent search of the automobile in the first instance.

First of all, it is observed that the trial transcript does not disclose any information whatsoever indicating what motivated or inspired the guard to venture into the area of search and seizure. It merely reflects that the guard spontaneously concluded that he should search for open containers. But discovery of open containers, in the absence of a prohibiting base regulation, would have been irrelevant since the driver had passed the sobriety test. Testimony did not reveal such a regulation.

Also, there is no evidence that "prohibited open containers" within the vehicle were visible to the guard. There is no evidence that such objects were a problem at the base with respect to good order and discipline and that, pursuant to a well planned gateway inspection system, inspections of this type at the gate had been properly authorized to alleviate a particular command problem. There is no testimony that the guard smelled or observed marijuana within the vehicle. There is no evidence that the base commander had ordered random gate inspections and, in so doing, had acted reasonably to: recover Government property; ensure national security; or, had some other legitimate and reasonable military purpose in mind. Nor is any contention made that the search and seizure was conducted pursuant to a lawful arrest and was undertaken to discover easily accessible weapons or other items which might endanger the apprehending agent or affect security of custody. Had any of the above facts or circumstances been present, an inspection or search of the vehicle could in all probability have been legally undertaken without consent of the owner.

Therefore, I am inclined to conclude that when the off-duty military driver of the vehicle passed the so-called field sobriety test, none of the above facts or circumstances being present, he had a Constitutionally guaranteed right to proceed on and about his private business, free of further detention or pseudo-legal interference; there being present no reasonable grounds or probable cause to show that a search (even if based upon freely given consent) of his person or property was indicated or justified.

The Fourth Amendment to the Constitution of the United States declares that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

It seems unnecessary to elaborate on or attempt to illuminate the spirit, intent and history of the foregoing provision. It should be sufficient to say that it is one of those amendments to the Constitution known as the Bill of Rights which guarantee fundamental rights and privileges of the individual. In their broader sense, these rights and privileges, taken as a whole, appear to symbolize liberty, a concept seemingly haunting the background of every search and seizure issue.

As stated in *United States v. Ball,* 8 U.S.C.M.A. 25, 29, 23 C.M.R. 249, 253 (1957): "The Fourth Amendment to the Constitution forbids unreasonable searches and seizures *and this provision is construed liberally to safeguard the right of the citizen to privacy.*" (Emphasis supplied).

Assuming that the driver and his passengers had a Constitutionally guaranteed right to continue on and about their private business, the perplexing question arises as to whether the gate guard could legally vitiate this personal right of the car occupants by unwarrantedly soliciting the privilege of conducting a consent search.

In my opinion, the issue raised by the circumstances of this case is quite obvious. May law enforcement officials solicit consent searches from private citizens without the existence of reasonable grounds or probable cause?

In this connection, and merely for purposes of analogy, under the guidelines set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), an individual must be advised of certain rights designed to insure against an unknowing and involuntary forfeiture of his Fifth Amendment protection against compulsory self-incrimination before his confession may be lawfully obtained. Nevertheless, the law does not provide the citizen the same insurance with regard to the protection afforded under the Fourth Amendment. To the contrary, without benefit of the advice of counsel, an individual may be persuaded to consent to the search of his person and property for incriminating tangible evi-

dence. Quite obviously, such evidence is potentially more self-incriminating than a "testimonial" confession which is prone to later repudiation and disclaimer.

Yet I am not advocating a requirement that prior to obtaining a consent search, the individual whose consent is being requested must be advised of his right to consult with counsel before making his decision. Such a requirement could very well be unnecessary, in the absence of flagrant abuses, and impede the efficiency of responsible and competent law enforcement authorities.

Moreover, it may be contended that a freely given consent search, even if obtained for no reason whatsoever by police authorities, does not infringe upon the rights or liberty of the individual because he is always free to deny the request for such a search. Notwithstanding, I do not believe that search and seizure is a sham legal game that law enforcement officials play with the citizenry. The area of human rights is, has been, and always will be highly sensitive and serious business. Consequently, I am simply saying that before a citizen is stopped, solicited, advised and cross-examined as to his understanding of a consent search, probable cause must be present to justify law enforcement officials treading, however gingerly, in this Constitutionally protected area.

Additionally, the average American citizen, military and civilian, is not educated in the semantics or the implications of a consent search. And it can be said, almost without fear of contradiction, that the courts have always scrutinized such searches with an exceptional degree of suspicion. Here, if anywhere, the law has been a jealous mistress.

In determining illegality of a search, the basic question, in both civilian and military procedure, is whether the search complained of was unreasonable and this depends upon the circumstances of each case and must be determined in each case. *United States v. Ball, supra.*

Accordingly, I would hold that the consent to search in this case was sought and obtained without the slightest degree of probable cause and thereafter exploited as a legal vehicle to reconnoiter into otherwise prohibited areas; thus overriding a fundamental Fourth Amendment prerequisite that every search and seizure, under the Constitution, must be reasonable in its premises.

In view of the foregoing, I would disapprove the findings as to Charge II and its specification as well as the bad conduct discharge and approve the findings as to Charge I and its specification, and only so much of the sentence, as approved below, which provides for confinement at hard labor for 75 days.