868

UNITED STATES

v.

Theodore J. TOLLIVER, 568 92 5569, Corporal (E–4) U. S. Marine Corps.

NCM 78 0564.

U. S. Navy Court of Military Review.

Sentence Adjudged 27 Oct. 1977.

Decided 25 Jan. 1979.

CAPT Jay C. Keithley, USMC, Appellate Defense Counsel.

LT Lawrence W. Muschamp, JAGC, USN, Appellate Defense Counsel.

CAPT Craig L. Kemmerer, USMCR, Appellate Government Counsel.

Before DUNBAR, Senior Judge, and GREGORY and GLADIS, JJ.

GREGORY, Judge:

Contrary to his pleas, appellant was convicted of larceny of $81.00 from another Marine and unlawful entry of a squadron office, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 934. He contends that the military judge erred in denying his motion to suppress the fruits of a search made incident to his apprehension. He argues that there was not probable cause for his apprehension and that such apprehension and the ensuing search were unlawful. Appellant's contention is considered correct.

Article 7(b), Uniform Code of Military Justice, 10 U.S.C. § 807(b), authorizes an apprehension "upon reasonable belief that an offense has been committed and that the person apprehended committed it." The United States Supreme Court has indicated an arrest may be effected when "the facts and circumstances within [the arresting officer's] knowledge . . . [are] sufficient to warrant a prudent man in believing that the [accused] had committed or was committing an offense." *Brinegar v. United States*, 338 U.S. 160, 175–6, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The Court of Military Appeals has stated "neither suspicion nor intuition provide probable cause to effect an arrest." *United States v. Myers*, 20 U.S. C.M.A. 269, 271, 43 C.M.R. 109, 111 (1971).

The record of trial reveals that, on the morning of 29 August 1977, $81.00 was taken from a pair of trousers left in a locked office aboard Marine Corps Air Station (Helicopter), Santa Ana, California. The

office was assigned to the Wire Section of Marine Air Base Squadron 16 (MABS–16). The money disappeared while all members of Wire Section, except appellant and one other, were outside performing physical training. The apparent theft was initially investigated by a member of the Criminal Investigation Division (CID). He learned that appellant and the other man who was not at physical training had been authorized to go to the dispensary and that access to the locked room had apparently been gained by breaking a window. Appellant was interrogated and denied involvement. Appellant also consented to a search of his person, which produced nothing of substance.

It was then determined that investigation of the matter was under the jurisdiction of the Naval Investigative Service (NIS), and a representative of that agency reported to the scene. The NIS investigator was briefed by his CID associate as to the general situation, including the fact that appellant had already been interrogated and searched. The NIS investigator then interrogated and searched the other man who had not been present at physical training, a Sergeant Macias. The investigator was apparently impressed with Sergeant Macias' demeanor and his explanation of his whereabouts, although no effort was made to verify the explanation. The investigator then spoke with the Wire Section NCOIC, who indicated that he did not think Sergeant Macias "had done it" and volunteered that "[appellant had] had financial problems in the past . . . [and] had made a couple of trips to Navy Relief [to seek assistance]". (R.12). The NIS investigator then called appellant in for a second interview.

Appellant was advised that he was a suspect in the theft and fully advised of his rights against self-incrimination and his right to counsel. The NIS investigator testified that appellant told him he had stopped by the Wire Section area to look for some paperwork before going to the dispensary. (Appellant denied this and testified he told the investigator he had gone directly to the dispensary after the morning formation). Appellant was then told that,

although he had already consented to one search of his person, the NIS investigator would like to search him a second time. Appellant refused, stating he saw no reason for it. The NIS investigator then left the room and called his office for advice as to whether he could search appellant without his consent. The agent then returned to the room and placed appellant under apprehension. He then proceeded to search appellant incident to the apprehension and found the $81.00 inside appellant's boot. Subsequently, appellant made an oral confession regarding the larceny to the NIS investigator.

The NIS investigator testified that his decision to apprehend appellant was based on the following factors: (1) appellant had been in the vicinity at the time of the theft; (2) appellant had appeared very nervous during the interrogation; (3) appellant had difficulty in accounting for his whereabouts prior to the theft; and (4) appellant had had prior financial problems. (R.18). The record of trial also reveals, however, that the investigator made no effort to verify whether appellant and Sergeant Macias had actually gone to the dispensary and failed to investigate whether personnel assigned to the same building, but not members of Wire Section, may have been in the area.

■ The evidence before us is insufficient to convince us that the NIS investigator had reason to believe that appellant had committed the crime. Appellant had already been searched once and nothing was found. It is considered more than coincidental that the decision to apprehend appellant was made immediately after appellant's refusal to consent to a second search of his person and the NIS agent seeking advice from his office by telephone.

■ There is no question that the information available would cause a trained investigator to suspect appellant. However, it appears the investigator here was acting on his own intuition and that there was no real probable cause to effect an apprehension. *Cf. Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); *United States v. Myers, supra.* For this reason, the

apprehension and ensuing search are considered to have been unlawful, as is the incriminatory statement which flowed from this search. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Nazarian,* 23 U.S. C.M.A. 358, 49 C.M.R. 817 (1975). There is no other evidence to support a conviction in this case.

Accordingly, the findings of guilty and the sentence are set aside, and the charges are dismissed.

DUNBAR, Senior Judge (concurring):

The question in this case appears to be whether the apprehension of appellant which gave rise to the search was justified or whether it was simply instituted as a measure to sanction a search which otherwise could not have taken place.

The Fourth Amendment to the Constitution forbids unreasonable searches and seizures and this provision is construed liberally to safeguard the right of the citizen to privacy. *United States v. Ball,* 8 U.S.C. M.A. 25, 23 C.M.R. 249 (1957).

The evidence would seem to indicate that there were no compelling facts or circumstances, at least in the eyes of the investigators, at the outset of the investigation justifying apprehension and search of the appellant, otherwise such procedure would have been put into effect much earlier. True, the appellant, along with another person, was a "suspect." Yet no consideration was given to placing either "suspect" under apprehension during the early stages of the investigation. It was only after appellant refused to consent to a second consent search of his person that the necessity for apprehension seems to have entered the picture. By that time the investigation had been turned over to a second investigating agency.

I would conclude, therefore, that the procedure of lawful apprehension was exploited and used in this case as a legal vehicle to justify the investigator's reconnoitering into an otherwise prohibited area, *i. e.,* a search of the person of the appellant.

It is a fairly well accepted principle that the primary purpose of allowing the search of a person lawfully apprehended or arrested is for the protection of the apprehending officer. Obviously, this was not the purpose of the apprehension in this case. The purpose here was to search for the fruits of a crime.

This is a difficult case, particularly since the facts show appellant to be guilty of the offense charged. Nonetheless, I believe the courts must strictly enforce the rules and procedures relating to search and seizure. As stated in *Ball, supra,* the Fourth Amendment must be interpreted liberally to safeguard the right of the citizen to privacy. If the courts do not require rigorous compliance with the procedures relating to search and seizure, they have no reason to expect compliance by law enforcement personnel.

GLADIS, Judge (dissenting):

I dissent. Convicted of larceny and unlawful entry, the accused contends that the military judge erred in refusing to suppress the fruits of a search and that the evidence is insufficient to establish an unlawful entry. In my opinion the fruits of a lawful search incident to an apprehension based on probable cause were properly admitted in evidence. The evidence of record, however, does not establish that the accused's entry was unlawful.

## PROBABLE CAUSE

I disagree with the conclusion of the majority that the agent who apprehended the accused lacked probable cause. The information known to the arresting officer must show facts, not conclusions, that establish probable cause. Such information, however, is not intended to establish the existence of guilt either *prima facie* or beyond a reasonable doubt, but only to establish that the probabilities weigh in the Government's favor, and thus justify the apprehension. *See United States v. Scarborough,* 23 U.S.C. M.A. 51, 48 C.M.R. 522 (1974). In determining whether probable cause has been shown, courts must not be hypertechnical. *Id.,* citing *United States v. Ventresca,* 380 U.S.

102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In dealing with probable cause, we deal with probabilities. These are not technical, they are factual and practical considerations on which reasonable and prudent men, not legal technicians act. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The question is not whether a better showing of probable cause could have been made, but whether one in fact was made. *United States v. Scarborough, supra; United States v. Leyva*, 4 M.J. 690 (N.C.M.R.1977), *pet. granted on other grounds*, 5 M.J. 19 (C.M.A.1978).

The agent who apprehended the accused in this case was justified. He knew that the accused had been in the vicinity at the time of the theft and had prior financial problems which furnished a motive for the crime. The accused had difficulty in accounting for his whereabouts and appeared to be extremely nervous when questioned by the agent. The agent had eliminated his only other suspect, a sergeant, after personally searching him with negative results and receiving a reasonable account of his whereabouts. He did not believe that any person who was assigned to a section other than the accused's and the sergeant's committed the crime because he would have been unfamiliar with the area, unaware that the victim had left his money in the room, or afraid to break into the room not knowing when the members of the section would return. Although further investigation might have established a better showing of probable cause, the facts known to the agent were sufficient to warrant a prudent man in believing that the accused had committed the crime and consequently established probable cause for his apprehension.

## UNLAWFUL ENTRY

The accused contends that the evidence was insufficient to establish that his entry into his section's training room, where the larceny occurred, was unlawful because the record does not establish that the individual who padlocked the door to the room had authority to do so. The accused entered through an unlocked window in order to find a cigarette. The nature of the room, the status of the accused, and the time and purpose of his entry tend to indicate a lawful entry. The padlocked door and the method of entry indicate the opposite. In the absence of additional evidence showing that the accused was not authorized to enter at the time, the record does not establish the unlawfulness of his entry beyond a reasonable doubt. *See United States v. Williams*, 4 U.S.C.M.A. 214, 15 C.M.R. 241 (1954).

Accordingly, I would affirm the findings of guilty of Charge I alleging larceny, disapprove the finding of guilty of Charge II alleging unlawful entry, and reassess the sentence.