UNITED STATES, Appellee

v

WALTER WEEMS, Jr., Private U. S. Army, Appellant

11 USCMA 652, 29 CMR 468

No. 13,846

Decided July 15, 1960

*First Lieutenant Robert D. Stiles* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel W. H. Blackmarr.*

*First Lieutenant Edward J. Lee* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. Mc-Conaughy.*

## Opinion of the Court

HOMER FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for two years, and reduction to the lowest enlisted grade. Intermediate appellate authorities affirmed, and we granted review on the issues whether, in view of the evidence of record, an instruction on the inferences to be drawn from possession of recently stolen property was proper, and whether the law officer's advice concerning those inferences was correct.

On May 12, 1959, a Sergeant Jackson discovered that two rings were missing from his footlocker. The items had apparently been removed by unlocking the trunk, an extra key to which was in possession of another soldier. The stolen rings were eventually located in a nearby pawnshop. The pawnbroker testified that he had received the items as a pledge on May 12, 1959, and that the pawn ticket bore the signature "Walter Weems, Junior." His testimony dealt at length with his invariable practice of comparing the signature on the pawn ticket with that on the pledgor's identification card and the picture on that document with the physical appearance of the individual. He was, however, unable to identify the accused as the person who had pawned the rings. An examiner of questioned documents expressed the opinion, based upon a comparison of the signature on the pawn ticket with handwriting exemplars voluntarily executed by the accused, that the person who wrote the exemplars also subscribed Weems' name on the ticket.

The accused appeared as a witness in his own behalf. He denied any knowledge of the rings' whereabouts or any connection with their pawning. He also controverted the declaration that he had signed the pawn tickets, pointing out differences between the exemplars and signatures which he believed significant. Moreover, he stated that he had lost his identification card and had been on pass on the day the rings were pawned. Other evidence was adduced which tended to substantiate the card's loss.

At the conclusion of the case, the law officer instructed the court-martial on the elements of the offense and other pertinent matters. Included was the following advice:

"You are further advised that, when it has been established by the

**653**

evidence that a person, personally, exclusively, and consciously takes possession of all or part of the property shown to have been stolen at or about the same time that it was found in his possession and that such possession is unexplained, *you will infer that he stole it. However, this inference may be rebutted in explanation, including evidence which is consistent with innocent possession.* If such evidence is before you it must be considered by you together with the entire evidence by and upon the circumstances of possession, upon your common sense, and your general knowledge of human nature, and the ordinary affairs of life, in order to determine whether you should draw such an inference and the relative weight to accord to it in conjunction with all the evidence in the entire case. Having done so, if there remains, in your mind, a reasonable doubt that the accused stole the property, you must acquit him of the offense." [Emphasis supplied.]

I

The first issue involves whether there was a basis in the record for the foregoing instruction, assuming its correctness in law. We are certain there was. The evidence adduced by the Government, if believed, leads inevitably to the conclusion that accused consciously and exclusively possessed recently stolen property on the date of its pledging. It is settled law that, upon that predicate being clearly established, a law officer may properly instruct the members of a court-martial concerning the permissible inferences to be drawn therefrom. United States v Ball, 8 USCMA 25, 23 CMR 249; United States v Hairston, 9 USCMA 554, 26 CMR 334. Accordingly, we pass to the next issue.

II

The second question before us concerns the effect of the law officer's peremptory instruction to the court concerning the inferences to be drawn from 654

the unexplained possession of recently stolen property. We have pointed out that conscious, exclusive, and unexplained possession of recently stolen property *permits* the inference that the person shown to have it in his custody was the individual who stole it. United States v Ball; United States v Hairston, both supra. In this case, the law officer's advice goes far beyond characterization of the inference as permissive. He informed the members that, once the requisite possession was established, "you *will* infer that he stole it." (Emphasis supplied.) Thus, the court-martial was informed that if it found the basic fact, *i.e.*, possession, to exist, it must infer guilt. This is the very type of instruction which we condemned in United States v Crowell, 9 USCMA 43, 25 CMR 305. Moreover, as we pointed out in United States v Miller, 8 USCMA 33, 23 CMR 257, at page 37, any instruction which requires the court to infer guilt from the existence of the predicate therefor is improper. It is clear that the law officer erred in converting a mere permissible inference to one of a mandatory character. In short, he directed a verdict of guilty upon the sole fact of possession of stolen property.

The Government nonetheless urges that the instruction is not prejudicially erroneous when examined in its entirety. It places particular emphasis on the discussion following the faulty advice and argues that the court-martial was finally informed of the permissive nature of the inference. With that contention, we cannot agree. The law officer's elaboration on the effect of possession dealt only with the effect of an explanation of that fact. Thus, he pointed out that the inference was rebuttable "in explanation, including evidence which is consistent with innocent possession" and "[i]f such evidence is before you it must be considered . . . [together with other matters]" in order to determine whether the inference should be drawn. The sum total of this advice is to reinforce the earlier error, for *it does no more* than emphasize that, lacking an explanation, the accused must be found to have stolen the rings.

Rather than curing the error, the balance of the instruction aggravates it. See United States v Crowell, supra, and Duncan v United States, 23 F2d 3 (CA 7th Cir) (1927). We are satisfied that the advice, even considered as a whole, was prejudicially erroneous.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge QUINN and Judge LATIMER concur.