UNITED STATES, Appellee

v

RONALD D. MARSH, Private, U. S. Marine Corps, Appellant

13 USCMA 252, 32 CMR 252

*Lieutenant Colonel A. M. Hearn,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel L. W. Martin,* USMC.

*Commander Benjamin H. Berry,* USN, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Commander Leo F. O'Brien,* USN, and *Lieutenant Conrad Alexander Buhler,* USNR.

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial upon a specification of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and an additional specification of being an accessory after the fact to a separate larceny committed by one Higgins—during the course of an alleged robbery—in violation of Uniform Code, supra, Article 78, 10 USC § 878, the accused pleaded guilty and persisted in such pleas after proper explanation of their meaning and effect. Following the return of a verdict by the court-martial consistent with his pleas, he was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for six months. The convening authority reduced the amount of forfeitures to $50.00 per month for six months, approved the punitive separation and confinement at hard labor, and probationally suspended execution of the discharge. The board of review affirmed, and we granted accused's petition for review upon two issues:

"1. Whether the evidence in mitigation (R. 16) was inconsistent with the plea of guilty to Charge II.

"2. Whether the subsequent acquittal of Higgins as the robbery principal affects the guilt of the accused as an accessory after the fact under Charge II."

I

The single specification under Charge II alleges that the accused, in violation of Code, supra, Article 78, became an accessory after the fact to larceny of a watch by one Higgins, a fellow Marine, from the person of an Okinawan national. Accused and Higgins originally were charged jointly with robbery of the Okinawan. Prior to the trial, accused offered to plead guilty to the unconnected larceny offense and to the alleged violation of Code, supra, Article 78, based upon his assistance to Higgins in disposing of the stolen wrist watch. In a sworn statement accompanying his offer so to plead, accused admitted that he had been present at the assault upon the Okinawan victim but stated that he had neither participated in nor had any knowledge of the robbery. He first became aware of the forcible larceny after that crime was terminated and the parties had scattered and "met again a little later." At that time, according to accused, "Higgins had an old Sea Hero watch which he displayed and said he took it from the Okinawan. I told him to get rid of it." The parties involved again separated. "A day or so later, the same watch mentioned above was more or less traded for some sake." One Browder handled this transaction "because he knew the bar owner." Accused "drank some of this sake knowing that it was purchased with credit obtained in trade or upon the security of the watch which Higgins claimed to have taken from the Okinawan." Accused concluded his recitation by declaring:

"... The foregoing is all I know about the so-called robbery incident. By participating in the drinking of the sake obtained from the proceeds obtained from the stolen watch, I reallize [sic] I again did wrong and I expect and deserve to be punished. I would like it to be known that I had no part in any robbery or assault. I consider that I have at this time made a full confession to my participation in both incidents—that is, the larceny of the watch from the pawn shop [unconnected with the robbery] *and the receiving of a benefit from the sale of stolen property and aiding Higgins*." [Emphasis supplied.]

The convening authority accepted accused's offer to plead guilty. New charges were preferred, a pretrial investigation was knowledgeably waived, and accused was thereafter brought to trial. He entered and persisted in his pleas, and was found guilty. In mitigation and extenuation, he read the foregoing pretrial statement to the court members and adopted it as a true recital of the events surrounding his connection with the alleged robbery and subsequent disposition of the stolen watch.

Understandably, the law officer noted accused's statement that he was unconnected with Higgins' alleged assault and theft of the watch and the emphasis placed on his drinking of sake bought with credit obtained by pledging the Okinawan's timepiece. He quite properly injected himself into the proceedings as follows:

"Questions by the Law Officer:

"Q. Well, I'm concerned with the part of the statement there relative to assisting, under the specification of Charge II, relative to his assisting HIGGINS. The allegation is that he assisted HIGGINS in disposing of that watch. I would like to know if—I'll word it this way. As I recall his statement, he said that he considered he was guilty because he participated in the drinking of the sake.

"DC: *And in aiding HIGGINS.*

"LO: Very well, that's satisfying." [Emphasis supplied.]

Subsequently, in his supplementary statement on behalf of the accused, defense counsel pointed out that accused was before the court-martial, *inter alia*, because "he's plead [sic] guilty . . . to aiding another to dispose of a cheap watch so that they can get something else to drink."

After accused had been sentenced, Higgins was brought to trial before another court-martial upon a charge of robbery. He was acquitted of this offense.

II

The first question with which we must deal is whether accused's statement in mitigation and extenuation is inconsistent with his plea of guilty to being an accessory after the fact to Higgins' alleged theft of the Okinawan's watch. Before us, appellate defense counsel urge that accused's statement, evaluated in its entirety, demonstrates that he did nothing more than share in the alcoholic beverage purchased with the stolen watch and, accordingly, that "it resounds with denial that the accused did any affirmative overt act for the purpose of preventing Higgins' apprehension as alleged in the specification." In reply, the United States contends that accused's statement is not "patently inconsistent" with this plea and emphasizes that, upon the law officer's inquiry, trial defense counsel expressly drew attention to the fact that accused had judicially confessed to drinking the sake *and to* "aiding HIGGINS."

Code, *supra*, Article 78, provides:

"Any person subject to this chapter who, knowing that an offense punishable by this chapter has been committed, receives, comforts, or assists the offender in order to hinder or prevent his apprehension, trial, or punishment shall be punished as a court-martial may direct."

By his plea, accused judicially admitted his guilt of each and every element of the offense charged. United States v Lucas, 1 USCMA 19, 1

254

CMR 19. It is only where he subsequently makes declarations that are inconsistent with such a judicial confession that we are required to hold that his plea should have been set aside. United States v Epperson, 10 USCMA 582, 28 CMR 148.

Appellate defense counsel concede that accused's statement is consistent with knowledge on his part that Higgins had committed an offense under the Code in that he had stolen the watch from his Okinawan victim. They argue only that his testimony in extenuation and mitigation is inconsistent with assistance for the purpose of preventing the offender's apprehension, trial, and punishment, the heart of their position being the claim accused's "assistance" was limited to imbibing the alcohol obtained by pledging the watch. We must disagree.

In addition to his consistent extrajudicial and judicial admissions that he knew Higgins had stolen the watch, accused also told the court members that he immediately advised the actual perpetrator of the crime to rid himself of it—the one vital piece of proof which could link its possessor with the actual commission of the theft. United States v Boultinghouse, 11 USCMA 721, 29 CMR 537; United States v Weems, 11 USCMA 652, 29 CMR 468; United States v Ball, 8 USCMA 25, 23 CMR 249. For, as we pointed out in the *Weems* case, at page 654, conscious and exclusive possession of recently stolen property *"permits* the inference that the person shown to have it in his custody was the individual who stole it." Moreover, it ill-construes accused's statement to say that he averred aiding Higgins *by* sharing in the proceeds of the stolen property. Rather, as accused quite clearly said, he both participated in drinking the potables thus procured *and aided Higgins* in disposing of the strongest piece of evidence available to prove that individual's connection with the crime. Considered in light of his earlier advice to "get rid" of the watch, we are thus unable to find a single factor in accused's statement which is in anywise inconsistent with his plea of guilty to being an accessory after the fact to Higgins' offense. Neal v United States, 102 F2d 643 (CA 8th Cir) (1939); United States v Bollenbach, 147 F2d 199 (CA2d Cir) (1945).

It follows that the first issue must be resolved against the accused.

### III

The second question before us involves an inquiry whether the subsequent acquittal of Higgins, accused's principal felon, necessitates disapproval of his conviction as an accessory after the fact, in violation of Code, supra, Article 78.

The Article in question, together with Code, supra, Article 77, 10 USC § 877, was based by the drafters of the Code upon the comparable provisions of Title 18, United States Code, §§ 2 and 3, and, for the first time, introduced into military law specific statutes punishing persons subject to the Code as accessories before and after the fact. Hearings before House Armed Services Committee on H.R. 2498, 81st Congress, 1st Session, pages 1223, 1224. The Federal statute, upon which Code, supra, Article 78, is based, adopted, in turn, the definition of accessory after the fact found in Skelly v United States, 76 F2d 483 (CA 10th Cir) (1935), *cert den* 295 US 757, 79 L ed 1699, 55 S Ct 914. The act states pertinently:

"Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." [18 USC § 3, supra.]

This Court has never had occasion to construe Code, supra, Article 78, with respect to the effect of the acquittal of the alleged principal offender. Thus, we turn of necessity to the construction accorded 18 USC § 3, supra, in order to determine the manner in which our sister courts in the Federal judicial scheme have dealt with the problem. Again, however, a paucity of authority is encountered, for, contrary to the assertion of Government appellate counsel, we are unable to find a single de-

cision in which it was precisely held that the disposition of the principal did not affect the punishment of an accessory after the fact. United States v Chapman, 3 F Supp 900 (SD Ala) (1931), upon which the United States relies, is not in point. There, the question presented was whether the predecessor act of 18 USC § 3 should be construed, in light of another Federal statute, 18 USC § 246, to require proof of the principal's arrest at the time of the accessory's aid to him. The distinguished District Judge merely pointed out that the two statutes punished entirely separate crimes. Accordingly, with respect to the offense of accessory after the fact, he concluded "it was not required that the original offender had been arrested." United States v Chapman, supra, at page 903. We must, therefore, search elsewhere for the meaning to be accorded Code, supra, Article 78.

It is clear that, at common law, there could be no conviction of the accessory upon the acquittal of the principal offender. Blackstone so notes:

". . . By the old common law, [even then changed by an Act of Parliament] the accessary could not be arraigned till the principal was attainted, unless he chose it, for he might waive the benefit of the law, and, therefore, principal and accessary might, and may still be arraigned, and plead, and also be tried together. But otherwise, if the principal had never been indicted at all and stood mute, had challenged above thirty-five jurors peremptorily, had claimed the benefit of clergy, had obtained a pardon, or had died before attainder, the accessary in any of these cases could not be arraigned, for *non constitit* whether any felony was committed or no, till the principal was attainted; and it might so happen that the accessary should be convicted one day, and the principal acquitted the next, which would be absurd." [Ewell, A Review of Blackstone's Commentaries, 2d ed, page 763.]

The same principle is noted by a leading American commentator:

"At common law an accessory cannot be tried, without his consent, until the guilt of the principal has been legally ascertained by a conviction or outlawry, unless they are tried together, and then the jury must be charged to inquire first as to the guilt of the principal, and, if they are satisfied of his guilt, then as to the accessory. If the principal is dead, or if he is acquitted on his trial, the accessory cannot be tried. In England and in most of our states, if not in all, these principles of the common law have been to some extent changed by statute.

"The fact that a statute allows an accessory to be tried before conviction of the principal does not allow conviction of an accessory without proving the principal's guilt, for 'no man can be accessory to a crime which has never been committed.' " [Clark and Marshall, A Treatise on The Law of Crimes, 6th ed, § 8.05, page 463.]

See also, Perkins, Criminal Law, page 584 (1957); Wharton's Criminal Law, 12th ed, § 284; 1 Wharton, Criminal Law and Procedure, § 116 (1957).

The United States concedes that the foregoing constitutes a correct recital of the principles applicable at common law to the trial of an accessory after the fact. It nevertheless urges that the passage of Code, supra, Article 78, based as it is upon the antecedent general Federal statute, was intended to change the common law and to provide for the punishment of such parties without regard to the principal offender's conviction. In so contending, it relies in part upon the provisions of paragraph 157, Manual for Courts-Martial, United States, 1951, which states:

"It is not necessary to prove the conviction or arrest of a principal in order to prove that the offense, as to which the accused is allegedly an accessory after the fact, has been committed. Furthermore, evidence of conviction of the principal (such as a record thereof) cannot be used to establish against an alleged accessory the essential fact that the offense has been committed by the principal."

The Manual provision, however, does not speak of, nor was it intended to deal with, the effect of the principal's acquittal. Rather, it sought to provide a procedural rule eliminating the common-law requirement for the trial of an accessory jointly with or subsequent to that of the principal and to note the holding in Kirby v United States, 174 US 47, 43 L ed 890, 19 S Ct 574 (1899), to the effect that *the fact* of the principal's conviction might not, consistently with the Sixth Amendment, United States Constitution, be used to establish the accessory's guilt. See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 248; cf. United States v Jacoby, 11 USCMA 428, 29 CMR 244; United States v Caszatt, 11 USCMA 705, 29 CMR 521.

Despite the lack of authority in the Federal system directly in point, however, it is nonetheless our ■■■■■■ ■ solemn judicial duty to construe the statute in question in accordance with the Congressional intent insofar as it is discernible and to apply the legislation, so construed, to the situation before us. And we are nonetheless certain that, by enacting a specific Article of the Code separately punishing the offense of accessory after the fact, Congress abrogated the common-law requirement of antecedent conviction of the principal and permitted the unrelated trial and sentencing of one who subsequently assisted him.

At common law, there was no difference in the guilt of the principal and accessories. The punishment was the same regardless of the degree of involvement of the participant. Wharton, Criminal Law and Procedure, supra, § 112. Indeed, until the decision in Kirby v United States, supra, an essential element of the accused's guilt as an accessory could be proven by the mere tender in evidence of the principal's conviction. Both England and the United States, however, soon saw the need for providing separately for the trial and punishment of accessories and principals, without regard to the latter's guilt. Clark and Marshall, supra. Such statutes commonly provide, as do 18

USC § 3 and Code, supra, Article 78, the definition of the independent offense of accessory after the fact and the punishment therefor. Although no mention is usually made in such acts of the effect of the principal's acquittal, the provision alone of a statutory definition and punishment has been construed to abolish the common-law requirement for the actual perpetrator's conviction. Thus, in Roberts v People, 103 Colo 250, 87 P2d 251 (1938), the argument that an adjudication of the main offender's guilt must be shown was rejected, with the notation, at page 254:

". . . Under the holding in the case of Howard v People, 97 Colo 550, 51 P2d 594, the accessory statute is held to create a substantive statutory crime and as construed in that case the conviction of the principal is not a condition precedent to the conviction of an accessory, as appears to have been the case at common law."

In the *Roberts* case, the defendant himself had first been tried as a principal and found not guilty. He was subsequently brought to trial and convicted of being an accessory, the verdict being upheld despite his own prior acquittal. See also State v Beintner, 36 NY Crim 336, 168 NYS 945, 947 (1918); Christie v Commonwealth, 193 Ky 799, 237 SW 660 (1922); State v St. Philip, 169 La 468, 125 So 451 (1929); and cases collected in Annotation, 24 ALR 603.

Thus, it will be seen that other jurisdictions have construed legislative enactments similar to the Article of the Code before us to provide for the punishment of an accessory after the fact without regard to his principal's guilt being judicially determined. And while the Federal courts have never so construed the provisions of 18 USC § 3, they have repeatedly concluded that its counterpart in 18 USC § 2, punishing accessories before the fact—to whom the same common-law principle was applicable—did away with any necessity that the principal offender also be convicted. United States v Klass, 166 F2d 373 (CA 3d Cir) (1948); Von Patzoll v United States, 163 F2d 216 (CA 10th Cir) (1947); Rooney v United States,

203 Fed 928, 933 (CA 9th Cir) (1913); Kelly v United States, 258 Fed 392, 402 (CA 6th Cir) (1919). In the *Von Patzoll* case, the Circuit Court declared, at page 218:

"Conviction of the principal is not a prerequisite to the conviction of the aider and abettor.

"And the acquittal of the principal presents no impediment to the trial and conviction of a person charged with aiding and abetting the commission of the crime. This because one who aids or abets the commission of a crime is guilty as a principal of a substantive, independent offense."

What is true with respect to the Congressional purpose in providing for the separate, statutory punishment of accessories before the fact must reasonably and rationally be held equally applicable to accessories after the fact. The same prohibition against trial and conviction of the accessory in the event of the principal's acquittal applied at common law regardless of whether his participation was before or after the fact. And if, as indicated in the above authorities, it was the intent of the legislature to abrogate that prohibition with respect to aiders and abettors, it necessarily follows that it was equally their determination so to change the law by providing for the separate definition and punishment of accessories after the fact. Thus, the Federal enactments and our Article of the Code in the same manner provide for "a substantive, independent offense," Von Patzoll v United States, supra, and, dealing as they do with the same general subject matter, the statutes should and must be construed in *pari materia*. 3 Sutherland, Statutes and Statutory Construction, § 6102 (3d ed, Horack). Accordingly, we must hold an accused may be punished for a violation of Code, supra, Article 78, based as it is upon the provisions of 18 USC § 3, without regard to the separate conviction or acquittal of the principal offender.

Having concluded, for the foregoing reasons, that accused's statement in mitigation and extenuation was not inconsistent with his plea of guilty and that Higgins' subsequent acquittal did not necessitate reversal of the findings of guilty with respect to accused's admitted accessoryship, the decision of the board of review must be, and is, hereby affirmed.

Chief Judge QUINN and Judge KILDAY concur.