**UNITED STATES**

v.

**Timothy Lee GREENER, 545 96 7996, Electronics Technician (Radar) Third Class (E-4), U. S. Navy.**

**NCM 76 2126.**

U. S. Navy Court of Military Review.

Sentence Adjudged 10 June 1976.

Decided 2 Feb. 1977.

LT Michael E. Blount, JAGC, USNR, Appellate Defense Counsel.

CAPT W. D. Blalock, USMCR, Appellate Government Counsel.

Before CEDARBURG, C. J., and BAUM and GLASGOW, JJ.

BAUM, Judge:

Pursuant to his pleas of guilty, appellant was convicted by general court-martial of larceny of fourteen Government parachutes and wrongful appropriation of a Government truck, both in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The Court sentenced him to a bad conduct discharge, confinement at hard labor for fifteen months, forfeiture of $180.60 per month for fifteen months and reduction in rate to E–1. The bad conduct discharge, confinement at hard labor for nine months, forfeiture of $180.00 per month for fifteen months and reduction in rate to E–1 have been affirmed below in accordance with a pre-trial agreement.

During the judge's inquiry with respect to the providency of appellant's plea of guilty pursuant to *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), the appellant stated that a friend, Bob R:

. . . informed me that he had beforehand stolen 14 parachutes from a plane at NAS Pensacola, out at Sherman Field, near HCT–16, and that he had put them out into the woods, had hid them, and he'd like someone to help him get them from the woods because he needed a truck, a government truck—they was in an area where a government truck would only be able to get out there and bring them back to some place so he could hide them and take them off later on. I agreed to do that. I took a truck that was at the shop and drove it out to Sherman Field and helped him load the parachutes he'd put there, and we brought them down to Ground Electronics where I worked at and left them in the truck. We then called up Jim [C], who is a second class at my shop, AT2, and talked to him and asked him if he'd come down and help pick them up. Bob wanted me to call him up—he's a friend of Bob's too. He said that he wanted a parachute, so I asked Bob, and Bob said he'd give him a parachute. He came down to my room and we went down to the shop. We picked up the parachutes and brought them to Bob [R]'s trailer. I guess that's about it. (R. 16).

The inquiry then continued as follows:

MJ: Now, have you discussed with your respective counsel what we mean by "principal" and what we mean by "aider and abettor?"

ACC: Yes, sir, I have.

MJ: Do you fully acknowledge by aiding and abetting [R] and taking these parachutes from the woods and then transporting them off the base, that you have aided and abetted, therefore, you can be charged as a principal?

ACC: Yes, sir. (R. 16, 17).

■ The judge misstated the law with respect to principals. Under the facts as related by the appellant, he would have been an accessory *after* the fact in violation of Article 78, UCMJ, rather than a principal in violation of Article 77. In order to be a principal, the aiding and abetting must ei-

ther be before the fact or there must at least be an agreement or plan before the commission of the offense for the accused to perform certain acts afterwards in furtherance of the plan's objective. *United States v. Wooten*, 1 U.S.C.M.A. 358, 3 C.M.R. 92 (1952); *United States v. Lell*, 16 U.S.C.M.A. 161, 36 C.M.R. 317 (1966); *Aaronson v. United States*, 175 F.2d 41 (4th Cir. 1949); *Milanovich v. United States*, 275 F.2d 716 (4th Cir. 1960); *Milanovich v. United States*, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).

■ That both the accused and his counsel saw the participation as exclusively after the fact, rather than before, is confirmed by the accused's unsworn statement in extenuation and mitigation and by defense counsel's argument on the sentence. The following is quoted from the accused's extenuation and mitigation presentation:

Q. Let's move along now to the offense itself, the two offenses and the charge. They are somewhat interrelated. Would you explain to the court whose idea this offense was originally, the theft of the parachutes?

A. Well, it was [R]'s idea.

Q. Who is [R]?

A. I don't know his rate right now, but [R] is a friend of mine. We worked up at Sherman Field at the battery locker.

Q. And did he communicate that idea to you?

A. Yes, he got a hold of me and asked me if I would help him transport some parachutes he had stolen.

Q. They had already been removed from the aircraft when you became involved?

A. He had taken them out of the aircraft during lunch time time [sic] that day and hid them out in the woods.

Q. So you became involved as the need for transportation came up. Is that the correct interpretation?

A. He didn't have no way of getting them from where they were to a place where he could get rid of them.

Q. Would you explain to the court why you did that?

A. Well, I don't really know how to explain it. He's kind of an immature person, and I always tried to keep him out of trouble, like a big brother. He had already done that, so I was trying to keep him from getting into anything further. Where the parachutes were at the time, he would have definitely gotten caught, and he needed to move them. (R. 52, 53).

In describing the accused's action in arguing on the sentence, the defense counsel made the following statement:

You've heard the accused indicate to you what his intentions were in becoming involved. . . . More specifically, I direct your attention to the fact that he testified that he didn't initiate this action that removed the parachutes from the aircraft. That had already been done at the time he became involved. I'd like to characterize his involvement as having occurred after the fact. (R. 63).

The statements by the accused during the *Care* inquiry and during extenuation and mitigation as well as the defense counsel's argument were all inconsistent with the plea of guilty to larceny of the parachutes on an aiding and abetting theory, which is the only theory applicable in this case. Accordingly, the military judge should have rejected the guilty plea and entered a plea of not guilty to the larceny of the parachutes.

■ The above statements are consistent with the offense of accessory after the fact. Were that a lesser included offense of larceny, this Court could approve such a lesser included offense. Accessory after the fact, however, is an offense separate and apart from the alleged larceny and it is not a lesser included offense. *United States v. London*, 4 U.S.C.M.A. 90, 15 C.M.R. 90 (1954); *United States v. McFarland*, 8 U.S.C.M.A. 42, 23 C.M.R. 266 (1957).

In view of the above, the finding of guilty of Specification 1 is set aside. The findings of guilty of the Charge and Specification 2 thereunder are affirmed. The case is returned to the convening authority, who may order a rehearing on Specification 1 and the sentence, in which case he should

first set aside the sentence. In the alternative he may reassess the sentence, approving an appropriate punishment which does not include a punitive discharge.

Chief Judge CEDARBURG and Judge GLASGOW concur.