**UNITED STATES**

**v.**

**Arden F. KEEN, 048 76 5948, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 88 4153.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 9 May 1988.

Decided 31 Oct. 1989.

LT Nicholas Fitzgerald, JAGC, USNR, Appellate Defense Counsel.

LT William R. Sprance, JAGC, USNR, Appellate Government Counsel.

LT Robert A. Kemins, JAGC, USNR, Appellate Government Counsel.

Before McLERAN, Senior Judge, and HILTON and RUBENS, JJ.

PER CURIAM:

Contrary to his pleas, a military judge sitting alone as a general court-martial convicted appellant of stealing various stereo

items belonging to two different Marines from their barracks room, in violation of Article 121, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 921; he was found not guilty of conspiracy to steal the same items. Appellant was sentenced to a bad-conduct discharge, confinement for 6 months, forfeiture of all pay and allowances, and reduction to E–1. The convening authority approved the sentence as adjudged, but suspended confinement in excess of 5 months.

Before this Court, appellate defense counsel asserts that "the government failed to prove appellant guilty of larceny as a matter of law because the larceny was already complete before appellant had any involvement with the stolen items." We have considered the record of trial, the assignment of error, the Government's response, and oral arguments presented by counsel.

A brief discussion of the facts as they relate to the legal concept of "asportation" is necessary to resolve the assigned error. In the early morning hours of the day of the theft, PFC L, PFC M and PFC T came into appellant's room. The group, which included appellant, began to discuss PFC M's roomates' stereo system, and eventually someone suggested that they steal the stereo system. Appellant stated that he thought they were joking at the time, but added, "If we're going to do it we better do it right." Later, at about 0630, appellant was awakened by the sound of PFCs L and T carrying stereo equipment into his room. PFCs L and T departed and returned at least one more time with more stereo equipment and a television. Shortly after the last trip, appellant assisted the others in carrying the equipment out of the barracks to a waiting car which belonged to PFC L's girlfriend. Appellant did not receive any form of compensation for his assistance in moving the property.

 We believe the evidence shows without doubt that appellant knew that he was helping to move stolen equipment. The legal issue raised by the assignment of error is whether the larceny was complete when the property came to rest in appellant's barracks room, or whether it continued until after the property was removed from the room. If the larceny was complete, appellant could not be guilty of larceny, but would be guilty of being an accessory after the fact in violation of Article 78, UCMJ, 10 U.S.C. § 878. *See United States v. Escobar*, 7 M.J. 197 (C.M.A.1979). If the asportation phase of the larceny continued with the removal of the property from appellant's room, appellant would be guilty of larceny as an aider and abettor. Article 77, UCMJ, 10 U.S.C. § 877. We believe that asportation continued beyond appellant's room, and therefore appellant was properly found guilty of larceny.

 "Asportation" is a legal term which describes the movement phase of a taking type of larceny. *See Black's Law Dictionary* 105 (5th ed. 1979). Depending upon the facts of the case, the nature of the stolen property, the property's initial location, the intent of the perpetrator, and the eventual disposition of the property, asportation ceases or continues without a precisely defined point of termination applicable under all circumstances.[1] Nevertheless, a larceny continues as long as the asportation continues, and

> the original asportation continues at least so long as the perpetrator of the crime indicates by his actions that he is dissatisfied with the location of the stolen goods immediately after the crime and with no more than a few minutes delay causes another to continue the asportation.[2]

In this case, it is clear that appellant's room was only a way point in the removal (asportation) of the property. The thieves had to keep the property moving in order to dispose of it and to avoid predictable eventual detection. The further removal to the vehicle, and perhaps beyond, was noth-

---

**1.** *See generally United States v. Barlow*, 470 F.2d 1245 (D.C.Cir.1972), *United States v. Escobar*, 7 M.J. 197 (C.M.A.1979), *United States v. Henderson*, 9 M.J. 845 (ACMR 1980).

**2.** *Barlow*, 470 F.2d at 1253.

ing more or less than an integral part of the scheme, intended from the outset by the perpetrators. Appellant joined in mid-scheme, so to speak, and thereby became involved in the larceny itself as an aider and abettor rather than as an accessory after the fact.[3]

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

**3.** This case is distinguishable from *United States v. Greener*, 1 M.J. 1111 (NCMR 1977). In *Greener*, this Court reversed a larceny conviction because the plea of guilty was improvidently entered where the providency inquiry, a subsequent unsworn statement by the accused and counsel's sentencing argument indicated that both the accused and his counsel viewed Greener's participation as occurring after the fact. Thus, Greener's participation was consistent with being an accessory after the fact, not a principal. *Greener* has also been criticized by *United States v. Bryant*, 9 M.J. 918 (ACMR 1980), which found the opinion incorrect in stating that there must be a plan or agreement before the taking in order for one who assists with asportation to be liable as a principal. In that regard we agree with the Army Court of Military Review.