UNITED STATES

v.

Eric S. NYSTROM, 124 58 3244
Private First Class (E–2),
U.S. Marine Corps.

NMCM 92 00873.

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 31 Jan. 1992.

Decided 23 Nov. 1993.

---

LT Randall L. Chambers, JAGC, USNR, Appellate Defense Counsel.

LT Richard J. Huber, JAGC, USNR, Appellate Government Counsel.

Before JONES and REED, Senior Judges, and LAWRENCE, J.

LAWRENCE, Judge:

Pursuant to guilty pleas, appellant was convicted at a general court-martial of being an accessory after the fact to murder, a violation of Article 78, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 878. He was sentenced by the military judge to confinement for 9 months, reduction to pay grade E–1, forfeiture of all pay and allowances, and a bad-conduct discharge. The convening authority approved the sentence.

## ISSUE

The case was submitted to us on mandatory review pursuant to Article 66(c), UCMJ, without assignment of error. We specified the following issue:

> Was the providence inquiry, as it related to the factual basis for appellant's belief that LCpl Farina had committed murder, sufficient· to support the military judge's finding appellant guilty of being an accessory after the fact to murder?

We conclude that the failure of the military judge to explain the elements of murder to appellant resulted in prejudicial error. Further, appellant's responses during the providence inquiry provide an inadequate factual basis for appellant's guilty pleas to the charged offense. Based on these errors, we set aside the findings and sentence.

## FACTS

The case arises from the fatal stabbing by another Marine of a Japanese national in a park on Okinawa. Beginning the providence inquiry, the military judge read the elements of the offense of accessory after the fact as follows:

> The first element is that on or about 14 June 1991, or sometime before then, an offense punishable by the code was committed by a certain person, that person alleged here is Lance Corporal Brian—Daniel Brian Farina.
>
> The second element of this offense is that you knew that Lance Corporal Farina had committed murder.
>
> The third element is that thereafter, you assisted Lance Corporal Farina by hiding the knife that Lance Corporal Farina used to murder [the victim].
>
> And the fourth element is that you did so for the purpose of hindering and preventing the apprehension of Lance Corporal Farina.

Record at 48. The military judge did not, however, read the elements of the offense of murder.

After a few questions to establish in personam jurisdiction over appellant, the following inquiry took place:

MJ: On or before the 14th of June, did you know that Lance Corporal Daniel Brian Farina had committed an offense punishable by the Uniform Code of Military Justice?

Accused: Yes, sir.

MJ: What offense had he committed?

ACCUSED: I found out later through the cab that a Japanese National had been murdered that night when we were coming back to base.

MJ: And did you know or have reason to believe that Lance Corporal Farina had murdered this person?

ACCUSED: Lance Corporal Farina had told me that night at the park that he had killed or he thought he had killed a Japanese National.

MJ: And did you believe him at the time?

ACCUSED: Yes, I did, sir.

MJ: Had Lance Corporal Farina indicated to you that at the time he had killed a Japanese National that he had had a premeditated design to kill? That is, he had intended to kill him?

ACCUSED: No, sir.

MJ: Did he tell you that the person—that the killing of this person was unlawful or did you know that this killing of this person was unlawful?

ACCUSED: I did know it was unlawful, sir.

MJ: Okay, there are several different ways that a killing of a person may be unlawful and constitute murder. Now, what you are alleged to have done here is to have been an accessory after the offense of murder. Now, what was it about this unlawful killing that leads you to believe that Lance Corporal Farina had committed a murder? Just tell me about what you knew about what had happened.

ACCUSED: At the time that night, he had told me that he had killed a Japanese by telling me, "I killed him, I killed him." And later we had gone back up to the park to see if we could give this Japanese any assistance and maybe turn Farina in, but we found that when I went up there, there were many Japanese were up there, there were flash bulbs going off; I felt that then—you know, he's dead. Then through the cab, the information was also given.

MJ: So did you know, at the time, that this Japanese, [the victim] was in fact dead?

ACCUSED: Yes, sir.

MJ: And did you know that his being killed by Lance Corporal Farina was unlawful?

ACCUSED: Yes, sir.

MJ: Now, an unlawful killing may be manslaughter, it may be voluntary or involuntary; it may be negligent homicide, but these do not constitute murder. Murder is a specific type of homicide carrying a certain degree of culpability. That is, a certain mind set involved.

Now, what was it about this particular, unlawful killing that leads you to believe that it was murder? Now, let me give you some possibilities: Could Lance Corporal Farina or did you know at the time that he had a premeditated design to kill?

Now let me define premeditation for you. It's the formation of a specific intent to kill someone and having time to consider the act before you do it, not necessarily a long time, a split second is sufficient. If there was a situation where he realized that, "If I do this, he's going to die and I'm going to go ahead and do it anyway", that's premeditation.

Do you understand that?

ACCUSED: Yes, sir.

MJ: Now did you know at the time whether Lance Corporal Farina had premeditated before he killed this person?

ACCUSED: We find that—at the time, I would say yes, sir, because he had gone over there with the knife thinking, through the stories he had heard, that something could happen 'cause he armed himself with the knife in case that anything would happen, which gives me the basic idea that if

he expected something to happen, he would use the knife.

....

MJ: Okay, was Lance Corporal Farina in a situation where he would have felt the need to either kill [the victim] or to inflict great bodily harm upon him?

ACCUSED: Definitely, sir, because the stories he had heard about [the victim] being a drugee and using his Japanese marital arts or his skills to beat up other people, and at the time he seemed very scared of [the victim].

MJ: So, did you know at the time that Lance Corporal Farina had intended either to kill or to inflict great bodily harm upon [the victim]?

ACCUSED: Yes, sir.

MJ: You knew that and you knew that he had intended that at the time that he killed him?

ACCUSED: At the time, I would say yes, sir.

MJ: Now there is a provision in the law where if a person feels threatened, a person may be justified in using certain force in self-defense, but that's a matter to be resolved if that person is charged with that and we're not particularly concerned with that this time. Right now, what we're concerned with is whether the elements of murder existed, whether those elements can be negated possibly at trial by raising a defense of self-defense is not, I believe, necessarily—necessary to be explored at this time.

So, do you understand what I'm saying?

ACCUSED: Yes, sir.

MJ: So, what you knew at the time was that [the victim] was dead, that his death resulted from being stabbed with a knife by Lance Corporal Farina, that this killing was unlawful, and that at the time of the killing, Lance Corporal Farina had intended either to kill him or to inflict great bodily harm upon him. Is that correct, all that correct?

ACCUSED: Yes, sir.

MJ: Okay. Now, knowing this, what, if anything, did you do to assist Lance Corporal Farina?

ACCUSED: On coming back to the barracks, I hid the knife in the lounge and seen blood on his hands and knees; told him to wash that off.

Record at 49.

The military judge continued to elicit facts concerning hiding the knife and then continued.

MJ: Now did you realize, [when appellant hid the knife], that as a possible consequence of your hiding the knife, Farina could possibly avoid being apprehended and going to trial and punished for his having killed [the victim]?

ACCUSED: Yes, sir.

....

MJ: ... So, are you saying here that at the time [the knife was hidden] you knew that Lance Corporal Farina intended to either kill [the victim] or to injure him....

ACCUSED: Yes, sir.

MJ: In other words, basically disabled him in making a preemptive strike, so to speak, to avoid being attacked possibly in the future by [the victim], is that right?

ACCUSED: Yes, sir.

Record at 54–55.

## ANALYSIS

### I.

 We turn first to the military judge's failure to read or explain the elements of the offense of murder to appellant. *See* Military Judges' Benchbook, Department of the Army pamphlet 27-9, May 1989, Chapt. 3, p. 3–1 (stating that in a contested case after giving the elements of accessory after the fact the military judge *must* instruct on the elements of the offense allegedly committed by the principal). For simple military offenses whose elements are commonly known and understood by servicemembers, an explanation of the elements of the offense is not required to establish the providence of a guilty plea if the record otherwise makes clear that the accused understood those elements. *See United States v. Kilgore*, 21 C.M.A. 35, 44 C.M.R. 89 (1971). For more complex offenses, especially those such as conspiracy in which criminal liability turns on

an agreement to commit another offense, failure to explain the elements will generally result in reversal. *United States v. Pretlow*, 13 M.J. 85 (C.M.A.1982). Because the offense of accessory after the fact requires, as we explain below, that the accused have actual knowledge of the commission of the offense by the principal, we adopt the holding in *United States v. Williams*, 6 M.J. 611 (A.C.M.R.1978), *petition denied*, 6 M.J. 290 (1979), and hold that under *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969), failure to explain the elements of the underlying offense of murder during the providence inquiry into a guilty plea to accessory after the fact to murder is error. What little explanation of murder the military judge did give was confusing and insufficient. In this case, as the following makes clear, the error resulted in prejudice to appellant since the inquiry fails to establish that he sufficiently understood the elements of the offense of murder such that he could reasonably conclude that the principal committed that offense. Additionally, the failure to adequately explain and discuss the underlying offense of murder undoubtedly contributed to the inadequacy of the factual basis for the guilty pleas and the numerous ambiguities in appellant's responses.

## II.

Article 78, UCMJ, is derived from 18 United States Code § 3 (1948), and the language of the two provisions is still virtually identical. *United States v. Marsh*, 13 C.M.A. 252, 32 C.M.R. 252, 255–56 (1962); 18 U.S.C. § 3 (1982); *Hearings Before a Subcommittee of the Committee on Armed Forces, House of Representatives, on H.R. 2498, A Bill To Unify, Consolidate, Revise, and Codify the Articles of War, the Articles for the Government of the Navy, and the Disciplinary Laws of the Coast Guard, and to Enact and Establish a Uniform Code of Military Justice*, 81st Cong., 1st Sess. 1224 (1949). The elements of the offense of accessory after the fact as set forth in the Manual for Courts–Martial are:

(1) That an offense punishable by the code was committed by a certain person;

(2) That the accused knew that this person had committed such offense;

(3) That thereafter the accused received, comforted, or assisted the offender; and

(4) That the accused did so for the purpose of hindering or preventing the apprehension, trial, or punishment of the offender.

Manual for Courts–Martial, United States, 1984 (MCM), Part IV, ¶ 3(b). Because these elements are the same as those of the federal offense contained in 18 U.S.C. § 3, federal interpretation of the U.S.Code provision is persuasive authority in interpreting Article 78.

■ The record contains an inadequate factual basis for the first two elements of the offense. The first element requires that the substantive offense have been committed. In this case, the facts elicited from appellant must establish that LCpl Farina murdered the victim. The elements of the offense of murder that seemingly apply to the factual circumstances related by appellant are as follows:

(1) That the victim is dead;

(2) That his death resulted from an act of Farina;

(3) That the killing was unlawful; and

(4) That, at the time of the killing, appellant had the intent to kill or inflict great bodily harm upon the victim.

■ The third element of the offense of murder requires a factual basis in the providence inquiry to establish that the killing of the victim by Farina was unlawful. The military judge apparently thought that the possible existence of self-defense by the principal was irrelevant in determining whether a murder had been committed. Although it is true that in the federal courts the acquittal of the principal does not bar conviction of another as an accessory after the fact, this rule of law is based on the realization that the verdict in the principal's trial may result from jury compassion or compromise or from rules of evidence or exclusion that are inapplicable in the trial of the accessory after the fact. *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980); *see United States v. Marsh*, 13 C.M.A. 252, 32

C.M.R. 252 (1962). In a contested trial involving a charge of accessory after the fact under Article 78, UCMJ, or 18 U.S.C. § 3, the government must prove the existence of the underlying offense beyond a reasonable doubt. In such a trial, were the accused to introduce evidence raising a reasonable doubt whether the principal acted in self-defense, the factfinder would be required to acquit because the first element of the offense of being an accessory after the fact, that is, that the underlying offense has been committed, would not have been proved beyond a reasonable doubt. Thus, facts or circumstances that raise the defense of self-defense in the principal bear directly on the first element of the offense of being an accessory after the fact.

In this case, appellant was advised that whether Farina had acted in self-defense was irrelevant to appellant's guilt because appellant was not charged with murder. Neither trial counsel nor defense counsel questioned the military judge's assertion that self-defense by Farina was not pertinent to the inquiry; nothing in the record suggests that appellant was aware that the judge's statement is fundamentally erroneous. This erroneous advice is especially prejudicial in light of the facts elicited from appellant.

Appellant said that the killing was unlawful, however, we take that as a legal conclusion, not a fact. Appellant related that Farina carried the knife "in case that anything would happen." Appellant said that Farina definitely was "in a situation where he would have felt the need to either kill [the victim] or to inflict great bodily harm upon him." Farina was "very scared of [the victim]" because he had heard that the victim was a "drugee" who used his martial arts skills "to beat up other people." In spite of these facts, at the end of the inquiry, appellant inexplicably agreed that Farina "basically disabled [the victim] in making a preemptive strike, so to speak, to avoid being attacked possibly in the future by [the victim]." [1] The inquiry makes clear that appellant did not witness the stabbing or what took place between Farina and the victim just before it. These responses should have led the military judge to explain the defense of self-defense to appellant. Further, they required him to conduct a more probing inquiry for facts known to appellant, perhaps from investigative reports or statements from Farina, that establish that Farina did not act in self-defense. The failure to do so results in an inadequate factual basis for this element of the offense. [2]

■ For similar reasons, the inquiry contains an inadequate factual basis for the second element of accessory after the fact to murder. Not only must the murder in fact have been committed when appellant assisted

---

1. Appellate Exhibit VII is a statement from a civilian dependent who was with appellant and Farina at the time of the stabbing. This person said that while the three fled the scene of the stabbing in the cab Farina said "he did not kill the Japanese national for fun." Later in the statement, the dependent related that Farina said he stabbed the victim because "he thought the VICTIM was going to try to hurt him." Because this exhibit was entered during an Article 39(a), UCMJ, session prior to entry of appellant's guilty pleas and inquiry into them, it does not constitute an inconsistency with the later pleas. "Even if an accused sets up matters which directly conflict with his subsequent plea of guilty, no obstacle to acceptance of the plea is presented, for it is only inconsistencies arising after the plea has been entered that require resolution." *United States v. Bethke,* 13 M.J. 71 (C.M.A.1982). The exhibit should, however, have alerted the military judge and the parties to the issue of self-defense in the guilty plea inquiry.

2. The elements of unpremeditated murder and voluntary manslaughter are the same. Murder is reduced to voluntary manslaughter if the accused acted in the heat of sudden passion caused by adequate provocation. The "[h]eat of passion may result from fear or rage." MCM, Part IV, ¶ 44(c)(1)(a). If appellant's responses reasonably raise the possibility that Farina stabbed the victim as a result of adequate provocation or that when appellant hid the knife he thought that Farina acted from adequate provocation, his guilty pleas to the charged offense must be set aside, although a guilty finding of accessory after the fact to voluntary manslaughter might be affirmed. *See United States v. Foushee,* 13 M.J. 833 (A.C.M.R.1982); *but see United States v. Rice,* 20 M.J. 764 (A.F.C.M.R.1985), *aff'd,* 25 M.J. 35, cert. denied, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988) (statement during the providence inquiry that prior to the killing victim hit the accused in the head with a toaster was not substantial indication accused acted from adequate provocation which might reduce murder to manslaughter).

Farina, appellant must have known "with reasonable certainty" that it had been committed. *Skelly v. United States,* 76 F.2d 483, 487 (10th Cir.), *cert. denied,* 295 U.S. 757, 55 S.Ct. 914, 79 L.Ed. 1699 (1935). Actual knowledge is required for conviction, *United States v. Rux,* 412 F.2d 331 (9th Cir.1969); *Government of Virgin Islands v. Aquino,* 378 F.2d 540 (3rd Cir.1967); *Orlando v. United States,* 377 F.2d 667 (9th Cir.), *vacated on other grounds,* 387 F.2d 348 (9th Cir.1967); *see United States v. Tucker,* 14 U.S.C.M.A. 376, 34 C.M.R. 156, 1964 WL 4987 (1964), although such knowledge may be proved by circumstantial evidence, *United States v. Bissonette,* 586 F.2d 73 (8th Cir.1978).

■ This element requires more than knowledge that a killing occurred, it requires knowledge that the killing was murder. *See United States v. McConnico,* 7 M.J. 302 (C.M.A.1979). In examining whether this element is satisfied, it may not be presumed that appellant knew the applicable legal standard and correctly applied it to the facts known to him. "Where ... knowledge is an element of an offense charged, an honest mistake essential to the required state of mind will constitute a defense." *United States v. Ward,* 13 M.J. 626, 631 (A.F.C.M.R. 1982), *aff'd in part, rev'd in part,* 16 M.J. 341 (1983); *see Tucker.* To obviate guilt, the mistake need only be honest, it need not be reasonable.

Appellant stated that Farina was afraid of the victim, that the victim was a violent person with martial arts training, that Farina went to the encounter with the victim thinking that something might happen, and that Farina was in a situation where he felt the need to stab the victim. These statements suggest that when appellant hid the knife he may have been unsure that a murder had been committed due to his uncertainty whether the stabbing was excusable in whole or in part. Certainly, at trial he may have been convinced that the killing was done without excuse and was therefore unlawful, although without an explanation of and inquiry into the defense of self-defense the basis for this belief was not and cannot now be determined. The pertinent question, however, was what he knew when he assisted Farina. Because the military judge failed to go over the elements of murder at trial, particularly that requiring that the killing be unlawful, we cannot be certain that appellant understood the implications of his factual responses in relation to the applicable law. We also cannot conclude from this record that appellant knew when he hid the knife that murder or even manslaughter was committed.[3] Thus, the providence inquiry is inadequate due to the military judge's failure to delve deeper into appellant's understanding of the law and the facts and circumstances surrounding his knowledge of the stabbing at the time he assisted Farina.

## CONCLUSION

The findings of guilty and the sentence are set aside. The record is returned to the Judge Advocate General of the Navy for remand to the same or a different convening authority. A rehearing is authorized.

Senior Judge JONES and Senior Judge REED concur.

---

3. Further, the murder must have been committed before appellant committed the acts that make him an accessory to murder, thus, the victim must have died prior to the time appellant aided Farina. *See Aquino; United States v. Nava–Maldonado,* 566 F.Supp. 1436 (D.C.Nev. 1983); *United States v. Wilson,* 7 M.J. 997 (A.F.C.M.R.), *petition denied,* 8 M.J. 181 (C.M.A. 1979); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 758 (3rd ed. 1982); Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* 522 (1972); Justin Miller, *Criminal Law* 240 (1934); *cf. United States v. Kessi,* 868 F.2d 1097 (9th Cir.1989); *United States v. Keen,* 30 M.J. 1108 (N.M.C.M.R.1989); *but see United States v. McCoy,* 721 F.2d 473 (1983) (under 18 U.S.C. § 3, in a homicide case, it is sufficient if the defendant renders assistance when the victim is dying). The providence inquiry does not clearly fix the time of the victim's death. Appellant's confusing statements during the providence inquiry about multiple cab rides after one of which he hid the knife and told Farina to wash off the blood do not firmly establish that the victim was dead when appellant hid the knife or that appellant knew he was dead at the time. Other portions of the record, however, do indicate that the victim was dead when appellant aided Farina.