UNITED STATES, Appellee

v.

Daniel A. FREY, Staff Sergeant
U.S. Air Force, Appellant

No. 14-0005

Crim. App. No. 37759

United States Court of Appeals for the Armed Forces

Argued February 24, 2014

Decided May 19, 2014

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN, STUCKY, and RYAN, JJ., joined.  OHLSON, J., filed a
separate dissenting opinion.

Counsel

For Appellant:  Captain Michael A. Schrama (argued); Major
Nathan A. White.

For Appellee:  Captain Matthew J. Neil (argued); Colonel Don M.
Christensen, Major Charles G. Warren, and Gerald R. Bruce, Esq.
(on brief).

Military Judges:  Thomas A. Monheim and Le T. Zimmerman

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Chief Judge BAKER delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of members at Joint Base McGuire-Dix-Lakehurst, New Jersey. Appellant was convicted, contrary to his pleas, of one specification of engaging in sexual contact with a child who had not attained the age of twelve years and one specification of engaging in a sexual act with a child who had not attained the age of twelve years, both in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006). Appellant was sentenced to a dishonorable discharge, eight years of confinement, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence. The United States Air Force Court of Criminal Appeals (CCA) affirmed the findings and the sentence. Appellant then petitioned this Court and was granted review on the following issue:

> WHETHER THE AIR FORCE COURT ERRED IN FINDING TRIAL COUNSEL'S PRESENTENCING ARGUMENT WAS HARMLESS ERROR WHERE TRIAL COUNSEL INSINUATED THAT APPELLANT WILL COMMIT FUTURE ACTS OF CHILD MOLESTATION.

Like the CCA, we find that trial counsel's sentencing argument, while improper, was not prejudicial and therefore affirm the findings of the CCA.

BACKGROUND

On New Year's Eve of 2008, Appellant and his fiancée got into an argument while returning from a holiday visit to his family and she kicked him out of her house. Appellant called his friend and supervisor Master Sergeant (MSgt) KK and asked if he could stay with him for awhile. MSgt KK agreed and Appellant moved some belongings into his friend's basement. MSgt KK was hosting a New Year's Eve party that night and invited Appellant to attend. Near the end of the evening, Appellant wound up alone in the basement with MSgt KK's two daughters, ten-year-old RK and seven-year-old EK. After playing video games together, Appellant and the two girls put on the Batman: The Dark Knight movie. Appellant and RK were lying side by side on the pull-out couch.

All three fell asleep while watching the movie. When RK woke sometime later, she got up and turned off the movie projector, awakening Appellant in the process. RK lay down again and fell back asleep, only to awaken when she felt Appellant's hands on her stomach, under her t-shirt. Frightened, she lay still as his hands traveled up to her chest and began fondling her breasts. He then slid his hand down inside her pajama pants and underwear. He rubbed her vagina and penetrated her with his finger, causing her pain. Appellant fondled her breasts a second time and then moved his hand

3

downward to touch her vagina again. RK lay still the entire time, too scared to speak. While Appellant's hands were still on her, RK managed to get up off the couch and go upstairs. Too frightened to tell her father what had occurred, RK wrote him a note that read: "Daddy, The guy that moved in down stairs [sic] was toching [sic] me in the wrong places."

Late the following morning, Appellant moved his belongings out of MSgt KK's home. Sometime after he had departed, the civilian police were called. Appellant was charged with one specification of engaging in sexual contact with a child who had not attained the age of twelve years and one specification of engaging in a sexual act with a child who had not attained the age of twelve years, both in violation of Article 120, UCMJ. At a trial before members, RK testified remotely regarding the events of that New Year's Eve, testimony that had to be paused several times because RK began crying. The note she wrote to her father was admitted into evidence.

Members found Appellant guilty of both specifications. At sentencing, trial counsel requested that members impose a sentence of ten years of confinement, dishonorable discharge, forfeiture of all pay and allowances, and reduction to E-1. Defense counsel asked that members impose a sentence of less than ten years, but did not request a specific number, simply

asserting that:  "The defense would suggest to you that a shorter prison sentence is more appropriate in this instance."

During his sentencing argument, on rebuttal, trial counsel stated:  "Now, the Defense Counsel said, 'there's no evidence before you that he's ever done anything like this before.'  And there is no evidence before you.  But think what we know, common sense, ways of the world, about child molesters."[1]  Defense counsel objected to this statement and trial counsel asserted

---

[1] It should be noted and understood that this comment occurred in the context of additional comments by trial counsel regarding Appellant's potential recidivism.  During his initial sentencing argument, trial counsel made the following statements:

> [T]his sentencing case is about . . . . the protection of young girls everywhere. . . .
>
> . . . .
>
> . . . . What [does] our common sense and knowledge of the ways of the world tell us about jail time? . . . [W]hat we can be sure of is that every day he spends in jail will be one day less that [RK] doesn't have to worry about him being out on the street and that no other girl can suffer the same fate.
>
> . . . .
>
> . . . . [T]he Air Force will not tolerate child molesters . . . we want to protect young girls from the same fate . . . .

However, Appellant did not object to these statements. Therefore they are subject to plain error review. United States v. Fletcher, 62 M.J. 175, 179 (C.A.A.F. 2005).  However, because we find no prejudice in this case, with or without these additional statements, we need not address the predicate plain error question as to whether these statements amounted to obvious error.

that "I'm just arguing ways of the world." The military judge overruled the objection. In instructing the panel prior to sentencing deliberation, the military judge reminded the members that argument was not evidence and that the accused was to be sentenced only for the crimes for which he had been found guilty. However, he also told them it was appropriate for them to apply their "commonsense [sic] and knowledge of the ways of the world whether or not in your particular case that involves any implication suggested by counsel." The military judge instructed the members that the maximum period of confinement was life without parole.[2]

The members sentenced Appellant to a dishonorable discharge, eight years of confinement, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence. Before the Air Force CCA, Appellant argued that trial counsel had unduly inflamed the passions of the members by improperly suggesting Appellant would commit future acts of child molestation. The CCA found trial counsel's remarks went beyond the evidence of record and constituted error. However, it determined that, "[w]hen placed in the context of the total sentencing argument and the adjudged

---

[2] The military judge also instructed that the maximum punishment that could be adjudged included reduction to the grade of E-1, forfeiture of all pay and allowances, and a dishonorable discharge.

sentence" this error did not materially prejudice Appellant. The CCA upheld both the findings and the sentence.

## DISCUSSION

Improper argument involves a question of law that this Court reviews de novo. United States v. Marsh, 70 M.J. 101, 106 (C.A.A.F. 2011). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." United States v. Baer, 53 M.J. 235, 237 (C.A.A.F. 2000). Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be "confident that [the appellant] was sentenced on the basis of the evidence alone." United States v. Halpin, 71 M.J. 477, 480 (C.A.A.F. 2013) (brackets in original) (internal quotation marks omitted).

The standard for determining prosecutorial misconduct was established in Berger v. United States, in which the Supreme Court stated that trial counsel:

> may prosecute with earnestness and vigor . . . . But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

295 U.S. 78, 88 (1935). Trial counsel is entitled "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." Baer, 53 M.J. at 237. However,

7

the Rules for Courts-Martial (R.C.M.) and existing case law both establish that it is error for trial counsel to make arguments that "'unduly . . . inflame the passions or prejudices of the court members.'" United States v. Marsh, 70 M.J. 101, 102 (C.A.A.F. 2011) (alteration in original) (quoting United States v. Schroder, 65 M.J. 49, 58 (C.A.A.F. 2007)); R.C.M. 919(b) Discussion.

We agree with the CCA's finding that the trial counsel's sentencing argument was improper and see no reason to make a separate determination on this matter. By his own admission trial counsel's statements were not derived from the evidence presented at trial. Moreover, in lieu of evidence, trial counsel appealed to members to apply their knowledge of the "ways of the world" to sentence Appellant based on a risk of recidivism through serial molestation.

However, prosecutorial misconduct does not automatically require a new trial or the dismissal of the charges against the accused. Relief will be granted only if the trial counsel's misconduct "actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." Fletcher, 62 M.J. at 178 (internal quotation marks omitted). Reversal is appropriate when the trial counsel's comments, taken as a whole, "were so damaging that we cannot be confident that [the appellant] was sentenced on the basis of the evidence alone." Halpin, 71 M.J.

at 480 (alteration in original) (internal quotation marks omitted).

In Fletcher, this Court recommended balancing three factors to assess whether misconduct impacted the accused's substantial rights and the integrity of his trial:  "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction."  62 M.J. at 184.  In Halpin, this Court extended the Fletcher test to improper sentencing argument.  71 M.J. at 480.  In applying this test to the current case, we find that although the first two factors favor Appellant, the weight of the evidence supporting the sentence adjudged is such that we can be "confident that Appellant was sentenced on the basis of the evidence alone."  Id.

## Severity of the Misconduct

R.C.M. 1001, governing presentencing procedure, states that during argument, trial counsel "may refer to generally accepted sentencing philosophies" including "specific deterrence of misconduct by the accused."  R.C.M. 1001(g).  Such sentencing theories also encompass protecting society from the wrongdoer and general deterrence, preventing others from committing similar offenses in the future.  United States v. Ohrt, 28 M.J. 301, 305 (C.M.A. 1989).  Where trial counsel in this case overstepped the bounds of proper argument was in requesting that

members draw upon information not in evidence to make a specific conclusion about Appellant: that he was a serial child molester who had offended before and in theory would offend again. "Now, the Defense Counsel said, 'there's no evidence before you that he's ever done anything like this before.' And there is no evidence before you. But think what we know, common sense, ways of the world, about child molesters." Though this comment comprises three sentences in eight pages of sentencing argument, one is hard pressed to imagine many statements more damaging than the implication that someone who has been convicted of molesting a single child will go on to molest many more. Trial counsel's insinuation that Appellant was necessarily guilty of additional offenses and would be a serial recidivist if not confined was both unsubstantiated and severe.

Curative Instructions

The CCA found that the military judge's curative instructions remedied the impact of trial counsel's improper comment. We disagree. If anything, he made things worse. The military judge overruled Appellant's objection to trial counsel's improperly urging members to employ their common sense and "knowledge of the ways of the world" to draw conclusions as to whether Appellant was a serial child molester. Then, during his instructions to the members, the military judge reiterated that it was appropriate for them to: "apply your commonsense

10

[sic] and knowledge of the ways of the world whether or not in your particular case that involves any implication suggested by counsel. Again, it is up to you to determine whether or not that comports with your sense of the ways of the world." He then reminded members that the accused was to be sentenced only for the offense for which he had been found guilty. However, this was not sufficient to offset the notion that it was acceptable for members, absent any facts in evidence, to consider their own "knowledge of the ways of the world" conclusions as to whether Appellant was or would be a serial child molester when determining an appropriate sentence.

Both trial counsel and the military judge urged members to rely upon their "knowledge of the ways of the world" in assessing trial counsel's sentencing argument. There are two problems with the use of "ways of the world" in this context. First, members are supposed to adjudicate a sentence based on the evidence presented and the military judge's instructions, which define, among other things, the potential confinement exposure of the defendant and relevant sentencing factors and philosophies. Nowhere does the Manual for Courts-Martial, United States (MCM) or this Court's case law suggest that members are permitted to ignore this evidentiary requirement and replace it with their personal knowledge of the "ways of the world" to determine an appropriate sentence.

11

Second, whether or not a person convicted of a particular offense is more or less likely to offend again or become a serial recidivist is a question requiring expert testimony, empirical research, and scientific and psychological method, inquiry, and evidence.  Recidivism is not a matter resolved through appeal to common sense or a member's knowledge of "the ways of the world."  Moreover, where sexual offenses are concerned, especially those against children, such appeal is likely to invoke an emotional and stereotypical response, not necessarily an empirical one.  Neither is there agreement on just what "the ways of the world" might reflect with respect to recidivism.  According to a 1997 National Institute of Justice report, "[r]ecidivism rates across studies are confounded by differences in legal guidelines and statutes among States, length of exposure time (i.e., time in the community, where the opportunity exists to reoffend), offender characteristics, treatment-related variables (including differential attrition rates, amount of treatment, and integrity of treatment program), amount and quality of posttreatment supervision, and many other factors."  Robert A. Prentky et al., National Institute of Justice Research Report, U.S. Dep't of Justice, Child Sexual Molestation:  Research Issues iv (1997).

The term "ways of the world" refers to court members' evaluation of lay testimony, defenses, and witness

credibility.  See United States v. Rivera, 54 M.J. 489, 491

(C.A.A.F. 2001) (witness credibility); United States v.

Oakley, 11 C.M.A. 187, 191, 29 C.M.R. 3, 7 (1960)

(Ferguson, J., concurring) (insanity defense); United

States v. Wilson, 18 C.M.A. 400, 405, 40 C.M.R. 112, 117

(1969) (lay witness).  The term can include the fact that

"a single punch to the torso or head can kill or cause

serious bodily injury," Rivera, 54 M.J. at 491; or that a

defendant recanted his confession after talking to a

lawyer, United States v. Cuento, 60 M.J. 106, 111 (C.A.A.F.

2004).  It does not, however, include a likelihood that an

accused used drugs given proof he had used them before,

United States v. Cousins, 35 M.J. 70, 75 (C.A.A.F. 1992),

or the recidivism rates of child molesters.

As case law and the Military Judges' Benchbook have long

recognized, members are expected to use their common sense in

assessing the credibility of testimony as well as other evidence

presented at trial.  See United States v. Russell, 47 M.J. 412,

413 (C.A.A.F. 1998); United States v. Hargrove, 25 M.J. 68, 71

(C.M.A. 1987); Dep't of the Army, Pam. 27-9, Legal Services,

Military Judges' Benchbook ch. 2, § V, para. 2-5-12 (2010)

(hereinafter Military Judges' Benchbook).  Whether it is useful

rather than confusing to also instruct members to use their

knowledge of "the ways of the world" to assess the credibility

of evidence is a matter of discretion for the military judge. However, what military judges cannot do is invite members to substitute their understanding of the "ways of the world" for evidence or for the military judge's instructions on sentencing. One person's perception of the ways of the world might vary dramatically from another's, based on education, experience, and personal bias. The phrase "common sense" is sufficient, and more accurate, to convey the sort of personal knowledge members can rely upon when weighing evidence and formulating their decisions. Though language encouraging members to rely upon their knowledge of the "ways of the world" is present in the Military Judges' Benchbook, e.g., ch. 2, § V, para. 2-5-12, we note that it was stricken from the 1984 version of the MCM and is not part of the current MCM. Compare MCM ch. XIII, para. 74.a. (1969 rev. ed.), with MCM pt. II, ch. IX, at II-134 (1984 ed.).

Given the above analysis we conclude that the military judge's instructions were not sufficient to cure trial counsel's improper argument.

Weight of Evidence Supporting Sentence

Though Fletcher recommended a balancing of all three factors, it did not assign a particular value to each or comment on whether they should be weighed equally. In Halpin, this Court found that the third factor weighed so heavily in favor of

the government that it could be fully confident the appellant was sentenced on the basis of evidence alone.  71 M.J. at 480. As in Halpin, in this case the "weight of the evidence amply supports the sentence imposed by the panel."  Id.  And, as in Halpin, Appellant has failed to demonstrate he was not sentenced on the basis of evidence alone.

Trial counsel's argument was improper and potentially harmful.  As noted above, there are few labels as potentially damaging to a defendant than that of serial child molester. However, the test for prejudice under Halpin is whether or not we can be "confident that Appellant was sentenced on the basis of the evidence alone."  71 M.J. at 480.  We are.

The military judge established that the maximum punishment for sexual contact with and sexual assault of a child under twelve years of age was life without parole.  The Government requested ten years of confinement with a dishonorable discharge, forfeiture of all pay and allowances, and reduction to E-1.  Appellant requested that members adjudge a sentence of less than ten years -- "[t]he defense would suggest to you that a shorter prison sentence is more appropriate in this instance" -- but did not recommend a specific period of confinement.  In addition, trial counsel's improper comment was surrounded by powerful and proper sentencing argument.  Trial counsel pointed out the many ways in which being a victim of sexual assault

15

might impact the future of the ten-year-old victim.  He also highlighted the betrayal inherent in the fact that RK was the daughter of Appellant's supervisor and friend of ten years.  In addition, defense counsel, in his own argument, repeatedly reminded members that there was no evidence Appellant had committed sexual assault in the past or that he would do so again.

When determining a sentence, members are allowed to consider all evidence properly introduced before findings as well as the proffered sentencing evidence.  R.C.M. 1001(f)(2).  Nothing Appellant presented in mitigation -- letters from his pastor, his fiancée, and other family members testifying to his good character and the stress he had been under due to the recent death of his father, and a brief unsworn statement in which he did not admit his guilt -- was sufficient to mitigate the impact of then eleven-year-old RK's tearful testimony or trial counsel's admission of the actual note she wrote to her father the morning after the assault.

Most importantly, given that members adjudged an even lighter sentence than the Government requested and settled upon the period of confinement Appellant asked for -- something less than ten years -- we find no evidence of prejudice.  We therefore are confident that Appellant was sentenced based on the evidence rather than improper argument presented.  Thus,

16

trial counsel's argument, though improper, did not "materially prejudice[] the substantial rights of the accused." <u>Baer</u>, 53 M.J. at 237. Given this lack of any due process violation, we find Appellant is not entitled to relief.

CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Frey, No. 14-0005/AF

OHLSON, Judge (dissenting):

I agree with the majority that the trial counsel's sentencing argument was improper and that the military judge's instructions to the panel merely served to compound the error. Where I differ from my colleagues is that I conclude that the toxic nature of the trial counsel's comments, coupled with the deleterious effect of the military judge's instructions, poisoned the sentencing hearing beyond redemption. Thus, I would order a sentence rehearing in this case, and I therefore respectfully dissent.

We review the question of whether an argument was improper using a de novo standard. United States v. Marsh, 70 M.J. 101, 106 (C.A.A.F. 2011). In conducting this de novo review, we must ask: (a) was the argument erroneous, and (b) if so, did it materially prejudice the substantial rights of the accused? United States v. Baer, 53 M.J. 235, 237 (C.A.A.F. 2000).

In assessing whether an argument was error, our guiding principles are that a trial counsel may not "'unduly . . . inflame the passions or prejudices of the court members,'" United States v. Schroder, 65 M.J. 49, 58 (C.A.A.F. 2007) (alteration in original) (citation omitted), and the trial counsel's arguments must be limited to "the evidence of record, as well as all reasonable inferences fairly derived from such evidence." Baer, 53 M.J. at 237. Like the majority, I conclude

that the trial counsel's sentencing argument violated these fundamental tenets.

In assessing whether an erroneous argument was prejudicial, we must look at the argument in its totality and determine its cumulative effect on the fairness and integrity of the accused's trial. United States v. Fletcher, 62 M.J. 175, 184 (C.A.A.F. 2005). In sum, we must determine whether the trial counsel's comments were so damaging that we cannot be confident that the members sentenced the appellant on the basis of the evidence alone. Id.; United States v. Halpin, 71 M.J. 477, 480 (C.A.A.F. 2013). Unlike the majority, under the totality of the circumstances in this particular case, I conclude that we cannot be confident of that fact.

In analyzing this matter, I readily concede several important points. First, during a sentencing hearing a trial counsel may certainly use arguments that are crafted to address such sentencing philosophies as specific deterrence, general deterrence, and protection of society. Rule for Courts-Martial (R.C.M.) 1001(g). Second, there is a considerable body of academic and scientific literature which indicates that the recidivism rate of certain categories of child molesters is woefully high. See, e.g., Patrick A. Langan et al., Bureau of Justice Statistics, U.S. Dep't of Justice, Recidivism of Sex Offenders Released from Prison in 1994 passim (2003). Third,

under the appropriate circumstances, a trial counsel may be able to introduce evidence of an accused's recidivism risk at a sentencing hearing, and the panel members may then consider this evidence when fashioning their sentence.  See United States v. Ellis, 68 M.J. 341, 347 (C.A.A.F. 2010) (allowing expert testimony during sentencing as to the accused's risk of recidivism); R.C.M. 1001(b)(5).  Fourth, generally speaking, a sentence of eight years of confinement for someone who has been convicted of child molestation is not, on its face, unduly harsh.  See Manual for Courts-Martial, United States, Maximum Punishment Chart app. 12 at A12-4, Punitive Article Applicable to Sexual Offenses Committed During the Period 1 October 2007 Through 27 June 2012 app. 28 at A28-1 (2012 ed.) (MCM) (listing the maximum confinement for rape of a child and aggravated sexual contact with a child as life and twenty years, respectively).  And fifth, although a trial counsel may not strike "foul" blows during a sentencing hearing, he or she may certainly strike "hard" ones.  See Berger v. United States, 295 U.S. 78, 88 (1935).  Nevertheless, in my view, none of these points ameliorates or justifies the trial counsel's argument during the sentencing hearing in this case.

In his brief, Appellant takes issue with a number of comments made by trial counsel.  For example, during the sentencing hearing the trial counsel argued that "what we can be

3

sure of is that every day [Appellant] spends in jail will be one day less that [the victim] doesn't have to worry about him being out on the street and that no other girl can suffer the same fate," and averred that the sentencing of Appellant was about "the protection of young girls everywhere." In making these statements, the trial counsel failed to first take the relatively simple but critically important step of introducing evidence pertaining to Appellant's recidivism risk. Further, these statements could be considered as contributing to an atmosphere where the panel members' "'passions or prejudices'" could be "'unduly . . . inflamed.'"[1] Schroder, 65 M.J. at 58 (alteration in original) (citation omitted). But far more importantly in my view, these statements by the trial counsel absolutely pale in comparison to another argument the trial counsel made to the panel members, and to which defense counsel promptly objected. Because I believe the ramifications of the latter argument prove dispositive of the issue in this case, I will only address that argument in this opinion.

Specifically, during the trial counsel's rebuttal argument the following exchange occurred:

---

[1] I note that these arguments were not objected to at trial and therefore should be reviewed for plain error. Fletcher, 62 M.J. at 179; Halpin, 71 M.J. at 479. However, as discussed below, defense counsel objected to other comments and this Court looks at the cumulative impact of the trial counsel's comments as a whole to assess prejudice. Fletcher, 62 M.J. at 184; Halpin, 71 M.J. at 480.

> ATC:  Now, the Defense Counsel said "there's no evidence before you that he's ever done anything like this before." And there is no evidence before you.  But think what we know, common sense, ways of the world about child molesters.
>
> DC:  Your Honor, I'll just object again.  It's improper argument.
>
> MJ:  Trial Counsel[?]
>
> ATC:  I'm just arguing ways of the world, Your Honor.
>
> DC:  Your Honor, this is not ways of the world.
>
> MJ:  Overruled.  Continue.

And so, we are presented with a situation where the trial counsel blatantly argued to the panel members -- who would soon be deliberating on the appropriate sentence to impose on Appellant -- that although there was <u>no evidence</u> that Appellant had molested any children <u>before</u>, their knowledge of the "ways of the world" could allow them to conclude that he actually had done so.  In my view, the impropriety of this argument is nothing short of breathtaking.

Needless to say, the military judge's failure to sustain the defense counsel's immediate and well-founded objection to the trial counsel's argument did not ameliorate the problem one whit.  In fact, because the back-and-forth on this issue occurred right in front of the panel members, the military judge's ruling could be construed as exacerbating the harm to Appellant.  But worse, when the military judge gave his

5

sentencing instructions mere moments later, the military judge
actually compounded the problem -- as conceded by the majority.
The military judge correctly noted to the panel members that the
Government's argument included "[a] few statements . . . not
before you in evidence," but instead of solely instructing the
panel members to ignore those arguments, the military judge
instructed the panel members that they could place those
arguments "in context of whatever knowledge of the ways of the
world you have."  Thus, by giving this instruction, the military
judge could be seen as endorsing the patently improper and
grossly inflammatory argument made by the trial counsel.

In my view, this improper argument by the trial counsel,
coupled with the highly problematic instruction by the military
judge, likely inflicted great and irremediable damage on
Appellant's sentencing position –- and it is the Government's
burden to demonstrate that it did not.  Therefore, I would find
that Appellant's right to a fair sentencing hearing was
materially and fatally prejudiced.  However, in its prejudice
analysis, the majority concludes otherwise.

In supporting its position that the error by the trial
counsel ultimately proved harmless to Appellant, the majority
cites two factors.  First, the majority notes the abhorrent
conduct of Appellant and concludes that this alone would have
compelled the panel to impose a sentence of eight years of

6

imprisonment.  Indeed, I readily agree that a solid argument could be made in favor of sentencing Appellant to at least eight years in prison.  Nevertheless, because the trial counsel's argument was so grossly inflammatory and because of the totality of the other circumstances present in the instant case, I conclude that the Government did not come remotely close to meeting its burden of demonstrating that this particular panel in this specific case would have imposed this sentence absent the trial counsel's improper actions.

My reluctance to speculate on the panel's probable action in this case is informed by the fact that this Court reviews a large (and dreadful) number of cases involving sexual molestation, and I have yet to discern any pattern to the sentences imposed by panel members.  In fact, within days of this Court hearing oral argument in the instant case, petitions in two different cases were circulated where the facts were similar to -- if not worse than -- the instant case, and yet, with regard to confinement, the panel only imposed one year of imprisonment in one case, and eleven months of imprisonment in the other.  United States v. Havlock, No. ARMY 20130290, slip op. at 1 (A. Ct. Crim. App. Dec. 16, 2013), 73 M.J. __ (C.A.A.F. 2014) (order denying petition); United States v. Fiebelkorn, No. ARMY 20130629, slip op. at 1 (A. Ct. Crim. App. Jan. 14, 2014), 73 M.J. __ (C.A.A.F. 2014) (order summarily granting and

affirming the lower court). Thus, in a case such as the instant one where the punishment imposed was substantial and the improper argument by the trial counsel was egregious, I believe it is prudent not to place too much weight on the argument that we have the ability at the appellate level to determine that this sentence would have been imposed by this specific panel in this particular case even absent the trial counsel's improper argument.

Second, in its prejudice analysis the majority states that because the panel members "adjudged an even lighter sentence than the Government requested and settled upon the period of confinement Appellant asked for -- something less than ten years -- [there is] no evidence of prejudice." In my view, a numerical approach to this sentencing issue is fraught with problems. As just one example, one could as easily argue that because the Government received eighty percent of the confinement time that it requested, the Government is unable to meet its burden of showing that the improper argument did not tip the sentencing scales in its favor. Therefore, I once again would not place too much weight on the majority's approach in deciding that the error in the instant case was harmless.

Indeed, I believe the proper approach in analyzing the issue before us is to place less emphasis on the <u>result</u> of the sentencing hearing and to place more emphasis on the <u>process</u> of

the sentencing hearing.  Pursuant to that approach, I am compelled to conclude that the trial counsel's improper argument was not limited to "the evidence of record, as well as all reasonable inferences fairly derived from [that] evidence," Baer, 53 M.J. at 237, that the argument "'unduly . . . inflame[d] the passions [and] prejudices of the court members,'" Schroder, 65 M.J. at 58 (alteration in original) (citation omitted), that the cumulative effect on the fairness and integrity of Appellant's sentencing hearing was harmful and substantial, and that I "cannot be confident that [the members] sentenced [Appellant] on the basis of the evidence alone." Halpin, 71 M.J. at 480 (citation and internal quotation marks omitted).  Therefore, I believe the appropriate disposition of the instant case would be to order a sentencing rehearing.

Accordingly, I respectfully dissent.